**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 05-2287

SHERIDAN WALKER,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-04-519-RB)**

Charles A. Harwood, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant - Appellant.

David Williams, Assistant United States Attorney, (David C. Iglesias, United States Attorney, and Laura Fashing, Assistant United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

Before **HARTZ**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

**HARTZ**, Circuit Judge.

Sheridan Walker was indicted in the United States District Court for the District of New Mexico on charges of being a felon in possession of firearms and certain types of ammunition, *see* 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He

moved to suppress the evidence found in his home during a sweep by police officers, and the district court denied the motion. He then pleaded guilty to the charges but reserved his right to appeal the denial of his motion to suppress. On appeal he challenges that denial. We have jurisdiction under 28 U.S.C. § 1291. We reverse the decision of the district court and remand for it to determine whether exigent circumstances may have allowed police to search the house for victims in need of immediate aid.

## I.    FACTS

In the early afternoon of October 26, 2003, an anonymous woman called 911 in Roosevelt County to report that two men at 1868 Highway 236 had guns and were threatening to kill each other. When the dispatcher asked the caller what the two men were doing at the moment, she replied, "I don't know. I left." R. Vol. III at 98-99. At 12:33 p.m. the dispatcher forwarded the information to Deputy Sheriff Malin Parker. Parker attempted to confirm the address by reference to the Sheriff's home, which he knew to be at 600 Highway 236. After an apparent miscommunication with the dispatcher, he arrived at the home next door to the Sheriff's, where a woman was standing outside gardening. He asked the woman whether she had heard any gunshots or seen anything unusual in the neighborhood; she replied that she had not. Parker quickly realized that he was at the wrong house, and that 1868 Highway 236 was on the other side of the

Sheriff's home.  Once he saw the house at 1868 Highway 236, he recognized it from previous experience as that of Sheridan Walker.

Despite the confusion Deputy Parker arrived at the Walker residence within nine or ten minutes of the dispatch alert.  He saw no cars or people near the house.  As he approached the house, he heard over his police radio that Deputy Raul Rosa was meeting with John Walker—Sheridan's son—at the police station.  During the meeting Rosa had heard the alert and noticed that the address was John Walker's.  Parker radioed Rosa to ask whether John Walker had said anything about someone at the house being armed, but Rosa had no additional information.  Parker then asked Rosa who was involved in the altercation mentioned in the alert; Rosa replied that it was supposed to be John and Sheridan Walker.

As Deputy Parker walked to the door of the Walker home, two other officers arrived.  He knocked several times on the storm door (which was glass with a metal frame) and announced himself each time by saying "Sheriff's office," R. Vol. III at 20 (emphasis omitted); but he got no response.  He opened the storm door to knock on the inner wooden door, which was about 10 inches ajar.  (Although Mr. Walker's wife testified that the door had a doorbell, Parker testified that he did not see one, or he would have used it).  As he knocked, he announced in a loud, commanding voice that he was from the Sheriff's office.  His knock caused the door to open further, but he saw no one inside and nothing

indicating that a physical struggle had taken place. He again announced "Sheriff's office," at which point he heard a voice shout from inside the house, "Yeah, and I got a goddamn gun." *Id.* at 22 (emphasis omitted).

Deputy Parker and the two other officers immediately entered the home and ordered the speaker, Sheridan Walker, to keep his hands in the air. The officers subdued Mr. Walker, handcuffed him, and took him to the front porch. But they did not place him under arrest. Parker testified that because the dispatcher had reported two men with guns in the house, the officers suspected that someone else might still be in the house, either hurt or posing a threat to the officers. They therefore conducted a sweep of the bedrooms, bathrooms, and closets, looking where someone could have been hiding. During that sweep they discovered firearms in plain view in two of the bedrooms. A check on the firearms determined that several were stolen, so Mr. Walker was arrested. Mr. Walker was indicted on two counts: one for being a felon in possession of the firearms found during the sweep, and one for being a felon in possession of ammunition.

## II. DISCUSSION

Mr. Walker contends that the evidence seized from his home must be suppressed because (1) the entry into his home was unlawful and (2) even if the entry was lawful, the sweep of his home was not. "When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous,

and review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Apperson*, 441 F.3d 1162, 1184 (10th Cir. 2006) (internal quotation marks omitted).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Public officials trigger the amendment's protections when they intrude upon an individual's reasonable expectation of privacy. *See Kyllo v. United States*, 533 U.S. 27, 33-34 (2001) ("[A] Fourth Amendment search does *not* occur—even when the explicitly protected location of a *house* is concerned—unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and society is willing to recognize that expectation as reasonable." (internal quotation marks and brackets omitted)); *United States v. Bute*, 43 F.3d 531, 534 n.4 (10th Cir. 1994) ("A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.").

In particular, the Fourth Amendment imposes strict limits on when law-enforcement officers may enter a home without a warrant. *See United States v. McCullough*, 457 F.3d 1150, 1163 (10th Cir. 2006) ("'It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). A warrantless entry into a home may be justified, however, in

certain exceptional circumstances. *See Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971) ("It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'"); *see also Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006) ("We have held, for example, that law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, to prevent the imminent destruction of evidence, or to engage in 'hot pursuit' of a fleeing suspect." (internal citations omitted)); *Georgia v. Randolph*, 126 S. Ct. 1515, 1524 n.6 (2006) (listing "hot pursuit," "protecting the safety of . . . police officers," "imminent destruction [of a] building," "likelihood that [a] suspect will imminently flee," and "a fairly perceived need to act on the spot to preserve evidence" as exigent circumstances that might justify a warrantless search of a residence). With these principles in mind, we turn to Mr. Walker's two arguments.

## A. Initial Entry

Mr. Walker challenges the entry into his home on two grounds. First, he contends that Deputy Parker violated the Fourth Amendment by opening the screen door to knock on the partially opened inner door. Second, he contends that

Parker committed an additional violation by entering his home after he announced that he had a gun.

To support the first contention, Mr. Walker cites *United States v. Arellano-Ochoa*, 461 F.3d 1142 (9th Cir. 2006). In that case Border Patrol Agents entered a trailer (without knocking) after opening a screen door and a partially closed solid door. *See id.* at 1143-44. The court affirmed the denial of a motion to suppress but the opinion contains dictum that opening a screen door when the solid door is open constitutes a Fourth Amendment intrusion because it violates the occupant's reasonable expectation of privacy. *See id.* at 1145. Regardless of the merits of this proposition in some circumstances, we see no violation of Mr. Walker's reasonable expectation of privacy in Deputy Parker's knock on his inner door. Parker first knocked several times on the storm door. When that elicited no response, he tried to be heard by knocking on the inner door, an act that required opening the storm door. We suspect that most visitors would have done the same. In our view, opening the storm door to knock on the inner door, even though the inner door was partially open, was not a Fourth Amendment intrusion because such action does not violate an occupant's reasonable expectation of privacy.

Turning next to Deputy Parker's entry into the house, we agree with Mr. Walker that the entry was a Fourth Amendment intrusion. To justify the entry, the government relies on the exigent-circumstances doctrine. *See United*

*States v. Najar*, 451 F.3d 710 (10th Cir. 2006). This doctrine creates an exception to the general prohibition of warrantless entries when (1) the officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others, and (2) the conduct of the entry was reasonable. *See id.* at 718. The government has the burden of demonstrating both elements. *See United States v. Scroger*, 98 F.3d 1256, 1259 (10th Cir. 1996).

We agree with the district court that exigent circumstances supported the officers' entry. When Deputy Parker knocked on the inner door, again announcing that he was from the Sheriff's office, Mr. Walker responded, "Yeah, and I got a goddamn gun." R. Vol. III at 22 (emphasis omitted). This threatening remark justified the officers in taking prompt action to protect themselves. Although retreat was an alternative, it was also reasonable for them to take control of the situation by entering to disarm Mr. Walker, who could otherwise continue to pose a danger to the officers and others. Because the officers could reasonably believe that they needed to enter Mr. Walker's home to protect their own safety, and because they acted reasonably in entering and restraining Mr. Walker, we hold that the officers committed no Fourth Amendment violation in those actions.

### B. Sweep of the House

Mr. Walker next argues that the warrantless sweep of his home after he had been handcuffed and removed to the porch also violated the Fourth Amendment.

The district court justified the search as a "protective sweep" under *Maryland v. Buie*, 494 U.S. 325, 327 (1990) ("A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."). Such a sweep is permitted if "there [are] articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

This court has stated that a "protective sweep" of a residence to ensure officer safety may take place only incident to an arrest. *See United States v. Torres-Castro*, 470 F.3d 992, 996-97 (10th Cir. 2006) (collecting cases); *United States v. Davis*, 290 F.3d 1239, 1242 n.4 (10th Cir. 2002) ("As it appears in the first sentence of *Buie*, 'a "protective sweep" is a quick and limited search of premises, *incident to an arrest* and conducted to protect the safety of police officers or others.'" (internal brackets omitted)) (quoting *Buie*, 494 U.S. at 328). But Mr. Walker had not yet been arrested when the officers conducted the sweep, and the government has not argued that the sweep was incident to an arrest. Therefore, *Buie* cannot support the sweep.

The sweep may nevertheless have been proper under the exigent-circumstances doctrine set out in *Najar*, 451 F.3d at 717. In the context of this case, however, application of the exigent-circumstances doctrine to justify a sweep for the purpose of officer safety would eviscerate our precedent

establishing an incident-to-arrest requirement for such a protective sweep. We note that both *Najar* and the Supreme Court opinion on which it relied, *Brigham City*, 126 S. Ct. 1943, involved Fourth Amendment intrusions justified by a threat to a civilian's safety. Therefore, absent clarification from an en banc court, we refrain from justifying this sweep by applying the exigent-circumstances exception based on officer safety.

On the other hand, the government argued in district court and maintains before us that the sweep of Mr. Walker's home could be justified by the risk of danger to others, such as the person with whom Mr. Walker allegedly had been fighting. The district court did not address this potential justification for the sweep. We therefore remand for a determination whether the warrantless sweep of Mr. Walker's home was permissible under the exigent-circumstances doctrine as it relates to victim safety. *See id.*, 126 S. Ct. at 1947 ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury."); *Najar*, 451 F.3d at 714 ("'[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.'" (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978))).

**III.   CONCLUSION**

We REVERSE the judgment below and REMAND to the district court for consideration of whether exigent circumstances may have justified a search of Mr. Walker's home as a sweep for potential victims.