**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CLONNIE ALONZO LAYMAN,

    Defendant-Appellant.

No. 06-7124

(D.C. No. CR-06-11-01-JH)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Judge, **ANDERSON** and **BALDOCK**, Circuit Judges.[**]

A federal jury convicted Defendant Clonnie Alonzo Layman on one count of

conspiracy to manufacture with intent to distribute methamphetamine in violation of

21 U.S.C. § 846; two counts of possession with intent to distribute methamphetamine

in violation of 21 U.S.C. § 841(a)(1); one count of attempt to manufacture

methamphetamine in violation of 21 U.S.C. § 846; one count of felon in possession

of a firearm in violation of 18 U.S.C. § 922(g)(1); one count of possession of a

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist
the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir.
R. 34.1(G). This case is therefore ordered submitted without oral argument.

firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and one count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). The district court sentenced Defendant to 720 months imprisonment. Prior to trial, Defendant moved twice to suppress incriminating evidence seized from his person, mobile home, and travel trailer. Defendant also filed a motion to dismiss the indictment based on Double Jeopardy. The district court denied the motions. Defendant now appeals. On appeal, Defendant argues (1) the officers' initial warrantless entry into his mobile home and travel trailer was unreasonable; (2) the search warrant obtained by officers as a result of their initial entry failed to describe with sufficient particularity the place to be searched; and (3) previous state criminal charges coupled with a state in rem forfeiture action against his property bar his subsequent federal criminal prosecution. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

The relevant historical facts are taken from the transcript of the suppression hearing and are consistent with the district court's findings. The Cherokee County, Oklahoma Sheriff's Department received information from the Rogers County, Oklahoma Sheriff's Department that Bobby Dale Kelley had outstanding warrants for failure to appear on drug trafficking charges in Rogers County. Rogers County indicated Kelley possibly was staying at a residence in Cherokee County located on property owned by his father. On August 25, 2003, three Cherokee County officers

2

and three Cherokee Nation Marshal Service agents went to the specified location in south Cherokee County to arrest Kelley. The property was located in a heavily wooded area, and the officers could not see the residence from the road. They split into two groups, with one group approaching the residence from a dirt road and the other from a utility easement.

About thirty yards from the residence, the officers encountered an overwhelming ammonia-type, chemical smell which they immediately associated with the manufacture of methamphetamine. In a clearing, the officers came upon a mobile home that appeared vacant, *i.e.* run down with broken windows, and a travel trailer that appeared occupied. Near the trailer, paths appeared in the grass apparently caused by people and vehicles coming to and from the trailer. The chemical smell grew stronger as the officers moved closer to the residence. They could not determine if the overpowering smell originated from the mobile home or travel trailer. They observed items outside the trailer and mobile home that indicated the manufacture of methamphetamine, including several small burn piles often found incident to a clandestine methamphetamine laboratory. According to the testimony of Cherokee County Officer Brian Swim:

> Q: Okay. As you approached the residence to serve this arrest warrant, did you encounter anything you found unusual?
> A: Yes.

3

Q:     What was that?
A:     There was several items outside the residence that are related to manufacturing [of methamphetamine], and then there was also an overwhelming chemical smell.

Based on the ammonia-type smell, the items outside the residence, and the officers' experience and training, they suspected a meth lab was operating in the mobile home or travel trailer.

Officer Swim explained the officers conducted an initial search of the travel trailer because they feared someone inside might have been overcome by the chemical fumes. Furthermore, they knew the toxic and volatile chemicals involved in operating a meth lab could explode, thereby endangering both the officers themselves and anyone inside the trailer or mobile home. The officers first knocked on the travel trailer door, but received no answered. They tried to open the door, but it was locked. They pulled on the door causing the lock to open. Inside they found only a vacant trailer.

Next, the officers knocked on the front door of the mobile home. When no one answered, the officers tried the back door. On the back porch, the smell of ammonia became even more overwhelming. At that point, the officers observed more items associated with a meth lab. These items included a container with lithium strips soaking in mineral spirit, a container with a cloudy liquid, and brass fittings on a water cooler that appeared corroded by anhydrous ammonia. The officers entered the mobile home through the back door and discovered a meth lab in plain view.

4

They did not find anyone inside. The officers secured the premises, and obtained a search warrant from the District Court of Cherokee County. After obtaining the search warrant, the officers searched the mobile home and travel trailer thoroughly. In the mobile home, they found, in addition to the meth lab, containers of anhydrous ammonia, lithium battery strips, pseudoephedrine packets, solvents, and other chemicals necessary to manufacture methamphetamine. In the travel trailer, the officers seized more incriminating evidence, namely, methamphetamine, firearms, a "booby" trap, and drug paraphernalia, including scales and baggies. The officers also found documents identifying and connecting Defendant to the travel trailer.

During execution of the state court search warrant, Defendant drove onto the property. Because night had fallen, large halogen lights illuminated the search area. At this point, the officers had not come into contact with Kelley, and were unsure who was in the car. The officers lined the pathway and met Defendant with guns drawn. Sergeant Thompson of the Cherokee Nation Marshal Service ordered Defendant out of his vehicle and asked him for identification. Defendant presented his driver's license, which linked him to the documents discovered in the travel trailer. Sergeant Thompson performed a pat-down of Defendant. Defendant was unarmed. The sergeant, however, located on Defendant a ball wrapped in blue shop towels that proved to be approximately two ounces of methamphetamine. The indictment followed.

5

Defendant filed a motion to suppress the evidence seized from his person, mobile home, and travel trailer.[1]  In his motion, Defendant argued, among other things, the warrantless searches of his travel trailer and mobile home were unreasonable in violation of the Fourth Amendment.  The district judge referred the motion to a magistrate judge for a report and recommendation (R&R).  In a thorough R&R, the magistrate judge concluded the officers' initial warrantless entry into the travel trailer and mobile home was lawful.  The magistrate judge reasoned the strong chemical smell and the officers' observation of items outside the residence commonly associated with a meth lab established exigent circumstances justifying the officers' warrantless entry to protect themselves and anyone inside.  The district court overruled Defendant's objections to the R&R and adopted it in its entirety.

Defendant next filed a motion to dismiss the indictment based on double jeopardy.  Defendant claimed the State of Oklahoma's decision to dismiss state criminal charges against him in exchange for his agreement to forfeit property in a pending state in rem civil forfeiture proceeding barred his subsequent prosecution in federal court.  The district court concluded the Double Jeopardy Clause was not implicated because in rem civil forfeitures do not constitute punishment. The district court also concluded the doctrine of dual sovereignty precluded Defendant's claim

---

[1] Defendant also moved to suppress incriminating statements made at the time of his arrest.  The district court suppressed the statements.  The Government does not challenge that ruling on appeal.

6

that the federal indictment was barred based on the state court prosecution. Accordingly, the district court denied Defendant's motion to dismiss on the basis of double jeopardy.

Finally, Defendant filed a second motion to suppress evidence seized during the search. This time, Defendant argued the search warrant relied upon by the officers did not sufficiently describe the location of the property to be searched in violation of the Fourth Amendment's particularity requirement. The district court concluded no reasonable probability existed that another premises would be mistakenly searched because the warrant contained specific descriptions of the property and the executing officers had personal knowledge of the location of the property. Therefore, the district court denied Defendant's second motion to suppress.

II.

Defendant first argues the district court erred in upholding the officers' initial warrantless entry by applying the exigent circumstances exception to the warrant requirement. We review the district court's denial of the motion to suppress by viewing the evidence in the light most favorable to the Government. See United States v. Gregoire, 425 F.3d 872, 875 (10th Cir. 2005). We accept the district court's findings of historical fact unless clearly erroneous, and review its ultimate determination of reasonableness de novo. Id.

Warrantless searches and seizures inside a home are presumptively

7

unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980); see also Groh v. Ramirez, 540 U.S. 551, 559 (2004). Nevertheless, the warrant requirement is subject to certain exceptions. See Brigham City v. Stuart, 126 S.Ct. 1943, 1947 (2006). We have previously recognized the exigent circumstances exception to a warrantless entry "when the circumstances posed a significant risk to the safety of a police officer or a third party." United States v. Najar, 451 F.3d 710, 717 (10th Cir. 2006). This exception applies if (1) the officers had an objectively reasonable basis to believe an immediate need to enter existed to protect the safety of themselves or others, and (2) the conduct of the entry was otherwise reasonable. See United States v. Walker, 474 F.3d 1249, 1253 (10th Cir. 2007). The Government has the burden of proving both prongs of the two-part test. Id.

Under the first prong of the exigent circumstances exception to the warrant requirement, we evaluate whether the officers had reasonable grounds to believe an immediate need to enter existed "guided by the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." Najar, 451 F.3d at 718-719 (internal quotations omitted). This inquiry is one of reasonable belief. See id. at 719. Defendant's argument in this regard is two-fold. First, Defendant argues the officers, "faced with only the smell of ammonia emanating from another nearby structure," had no reason to believe this smell presented an immediate danger. We need not decide whether the smell of ammonia alone can give rise to exigent circumstances because the totality of the circumstances in this case

8

undoubtedly justified the officers' initial warrantless entry into the mobile home and trailer.  See Najar, 451 F.3d at 720.  The overwhelming chemical odor, coupled with items outside the residence that indicated the manufacture of methamphetamine provided sufficient evidence for the officers to reasonably believe a meth lab existed. Based on the officers' knowledge and training of the toxic chemicals involved, they were justified in reasonably believing the meth lab could explode, thereby endangering both themselves and others.  See United States v. Rhiger, 315 F.3d 1283, 1289 (10th Cir. 2003) (dangers associated with suspected meth lab established reasonable basis to justify officers' warrantless entry).

Second, Defendant argues the officers had no basis for reasonably believing a person was actually inside the trailer in need of immediate aid.  Defendant cites Brigham City, 126 S.Ct. at 1946, to support his argument.  In that case, officers responded to a 3 a.m. call about a loud party.  Upon arriving at the house, they saw four adults through a screen door and windows beating an endangered juvenile.  Id. Given this tumult, the Court held the officers' warrantless entry was reasonable.  Id. at 1949.  Brigham City is not dispositive.  The exigent circumstances exception does not require officers actually see someone inside in immediate danger, as long as they have an objectively reasonable basis for believing that someone might be in danger, including themselves.  See Rhiger, 315 F.3d at 1289.  Under the circumstances of this case, the officers had enough evidence to reasonably believe that someone might be inside and possibly overcome by fumes.  The officers received information that

9

Kelley, a wanted felon, was staying at the residence and paths in the grass indicated someone had been staying there and could be inside. The strength of the chemical smell further indicated that if someone was inside, they might be unconscious or incapacitated. Therefore, the officers' were justified in entering the trailer and mobile home to protect the safety of themselves and anyone inside.

Having determined the officers had an objectively reasonable basis to enter, the second prong of the test requires us to consider whether the manner and scope of the search was reasonable. See Najar, 451 F.3d at 720. Upon discovering no one inside the travel trailer, the officers exited without further investigation. They entered the mobile home from the back door, saw the meth lab in plain view, and made sure no one inside was overcome by fumes. Once they determined the meth lab was not operating and secured the premises, the officers immediately proceeded to get a search warrant without further intrusion. We agree with the district court that both the manner and scope of the officers' warrantless entry into the trailer and mobile home was reasonable.

Defendant characterizes the officers' initial warrantless entry into the trailer and mobile home as a "protective sweep." He argues such initial sweep was illegal because it was not incident to an arrest. We agree that in this circuit a "protective sweep" may take place only incident to an arrest. See Walker, 474 F.3d at 1254. The "protective sweep" exception to the warrant requirement, however, is not in play here. This case deals only with the exigent circumstances exception to the warrant

10

requirement.[2] As we just explained, this latter exception to the warrant requirement justified the officers' initial warrantless entry.

### III.

Defendant next argues the search warrant did not describe the place to be searched with sufficient particularity. We review the district court's ultimate determination of sufficient particularity de novo, and accept its factual findings unless clearly erroneous. United States v. Brooks, 427 F.3d 1246, 1251 (10th Cir. 1993). The search warrant described the location as follows:

> The residence and travel trailer to be searched may be located by beginning at the intersection of U.S. Highway 62 and State Highway 82. At this intersection travel south on State Highway 82 for approximately fourteen and two-tenths (14.2) miles to the intersection of State Highway 82 and a paved country road also known as Blue Top road. At this intersection turn left (east) onto Blue Top road and travel approximately one and one-tenths (1.1) miles to the intersection of Blue Top road and an unmarked private drive and travel approximately one-tenth (0.1) miles to the residence and the travel trailer to be searched.

Defendant argues this description is ambiguous because State Highway 62 and U.S. Highway 82 intersect at two junctions, one on the east and the other on the south side of town. Therefore, one of the junctions does not lead to the place to be searched.

To determine if a search warrant adequately describes the place to be searched, the test is (1) whether the description is sufficient to enable the executing officer to

---

[2] In the statement of facts section of the R&R, the magistrate judge inartfully referred to the initial warrantless entry as a "protective search." Reading the R&R as a whole, the magistrate judge clearly meant this description of the initial warrantless entry to apply in the exigent circumstances context.

11

locate and identify the premises with reasonable effort, and (2) whether any *reasonable* probability exists that another premises might be mistakenly searched. See Harman v. Pollock, 446 F.3d 1069, 1078 (10th Cir. 2006). The inquiry depends heavily on the facts of each case, as determined by practical accuracy rather than technical precision, and necessarily differs for rural and urban areas. United States v. Dorrough, 927 F.2d 498, 500 (10th Cir. 1991). Applying the appropriate test, we agree with the district court that the search warrant in this case described the location of the place to be searched with sufficient particularity.

Defendant's reliance on United States v. Williamson, 1 F.3d 1134 (10th Cir. 1993), is misplaced. In Williamson, we invalidated a search warrant, in which the *only* physical description provided was a rural mail box nine miles from the premises. Id. at 1136. The description here was much more specific. To begin, the warrant identified the place to be searched as a "residence and travel trailer." In addition, the warrant accurately specifies "Blue Top road" first at its intersection with State Highway 82, and then at its intersection with an unmarked private driveway leading to the "residence and travel trailer" to be searched. The district court correctly relied on our recent decision of Harman to conclude the description of the initial junction did not determine whether the location was sufficiently described; rather, the search warrant must be evaluated as a whole. See Harman, 446 F.3d at 1078 (noting we have upheld warrants where one part of the description is inaccurate, but the description has other accurate information to identify the place

12

to be searched with particularity). Furthermore, additional factors supported the warrant's descriptive sufficiency including the executing officers' personal knowledge of the location and the continued presence of officers at the location while the search warrant was obtained. See id. at 1079.

Simply put, no reasonable probability existed that another premises might be mistakenly searched in this case because the warrant's terms, when considered in their entirety, could only lead to Defendant's mobile home and travel trailer. See Dorrough, 927 F.2d at 500-501 (warrant describing a red, white, and black mailbox in the shape of a house at defendant's home was a unique landmark that enabled officers to locate the residence with reasonable effort). Even assuming the officers started at the inappropriate junction of the two highways, they would not have located "Blue Top road," much less another "residence and travel trailer" matching the rest of the warrant's description. Accordingly, the district court did not err in holding the search warrant was valid.

IV.

Defendant lastly argues the district court erred in denying his motion to dismiss based on double jeopardy. A defendant has the burden of proving double jeopardy. United States v. Trammell, 133 F.3d 1343, 1349 (10th Cir. 1998). We review the district court's legal determination on a double jeopardy claim de novo. Id. We review the underlying factual findings for clear error. Id.

In September 2003, the State of Oklahoma charged Defendant in state district

13

court with trafficking illegal drugs and manufacturing a controlled dangerous substance. On the same day, the State filed a Notice of Seizure and Forfeiture in state district court alerting Defendant that the State intended to forfeit certain items of his personal property pursuant to Oklahoma's civil forfeiture provision, 63 Okla. Stat. § 2-501. In March 2004, the State dismissed the drug charges against Defendant. In May 2004, a Journal Entry of Judgment and Forfeiture dated March 2004 appears forfeiting the personal property listed in the forfeiture proceeding. Defendant apparently agreed to forfeit his property in exchange for the dismissal of the state charges.

Defendant asserts he is now being prosecuted and punished twice for the same conduct in violation of the Double Jeopardy Clause. U.S. Const. amend. V. The Double Jeopardy Clause consists of three distinct constitutional protections: successive prosecutions for the same offense after acquittal, successive prosecutions for the same offense after conviction, and multiple criminal punishments for the same offense. See Monge v. California, 524 U.S. 721, 727-728 (1998). The third protection, which is in issue here, "prohibits the Government from punishing twice, or attempting a second time to punish criminally for the same offense." United States v. Ursery, 518 U.S. 267, 273 (1996). A prior state prosecution does not bar a subsequent federal prosecution for the same conduct. Abbate v. United States, 359 U.S. 187, 194 (1959). The premise of this dual sovereignty doctrine is "that the laws of separate sovereigns are indeed separate and that one act may violate the laws of

14

each; accordingly, prosecution by each cannot be for the *same* offense and double jeopardy concerns are not implicated." United States v. Raymer, 941 F.2d 1031, 1037 (10th Cir. 1991). A possible, yet limited, exception may exist where one sovereign is acting as "merely a tool" of the other to bring a second prosecution that is a "sham and cover" for a prosecution that otherwise would be barred. Bartkus v. Illinois, 359 U.S. 121, 123-124 (1959); see also Trammell, 133 F.3d at 1350 (noting this exception has been discussed, but never applied by the Tenth Circuit).

As the district court recognized, Defendant's double jeopardy claim fails for a number of reasons. First, in rem civil forfeitures do not implicate the Double Jeopardy Clause because they do not constitute punishment. Ursery, 518 U.S. at 270-271. Therefore, Defendant's punishment resulting from the federal prosecution is permissible. Second, Defendant's argument fails because the dual sovereignty doctrine applies. See Raymer, 941 F.2d at 1037-1038. The crux of Defendant's argument is that because the Cherokee Marshal Service, a federal agency, assisted in the investigation which resulted in Defendant's state prosecution, the deal Defendant made in state court precludes his federal prosecution. Defendant, however, presents nothing to suggest the Cherokee Marshal Service manipulated the investigation or the federal prosecution was a "sham and a cover" for an otherwise impermissible prosecution. Trammell, 133 F.3d at 1350. "When a defendant claims that federal and state officials are not acting as dual sovereigns, he has a substantial burden of proving one sovereign is so dominated by the actions of the other that the

15

former is not acting of its own volition." Raymer, 941 F.2d at 1037. Defendant simply has not met his burden of showing the Double Jeopardy Clause is implicated by his federal prosecution. See Trammell, 133 F.3d at 1350 (defendant does not satisfy this burden by "merely showing the state has conducted the majority of the investigation relied upon by the government in [his] federal prosecution").

Furthermore, we have previously held the dual sovereignty doctrine controlled in cases where the double jeopardy circumstances were far more compelling than those in the present case. See United States v. Padilla, 589 F.2d 481, 484 (10th Cir. 1978) (dual sovereignty doctrine permitted subsequent federal prosecution following state prosecution on the same conduct where the same attorney represented both the state and the United States in the two prosecutions against defendant). Therefore, Defendant's federal prosecution did not violate the Double Jeopardy Clause.

The judgment of the district court is

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge