BRISCOE, Circuit Judge,
dissenting:
I respectfully dissent. It is well established that we may take “interlocutory ju *1076 risdiction over denials of qualified immunity at the summary judgment stage to the extent that they turn on an issue of law.” Fogarty v. Gallegos, 528 F.3d 1147, 1153 (10th Cir.2008) (quotation, citations and alteration omitted). “Under this limited jurisdiction, we may review the district court’s abstract legal conclusions, such as whether the law was clearly established at the time of the alleged infraction.” Id. at 1153-54. We may not take jurisdiction at the interlocutory stage, however, over appeals that challenge the district court’s “factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiffs evidence is sufficient to support a particular factual inference.” Id. at 1154.
By asserting jurisdiction over this appeal, the majority implicitly, but erroneously, concludes, contrary to the conclusion reached by the district court, that reasonable minds could not differ with regard to whether the facts leading up to the officers’ entry into plaintiffs home gave rise to exigent circumstances. Because I agree with the district court’s conclusion that the evidence presented by the parties created genuine issues of material fact that precluded the entry of summary judgment in favor of defendants on qualified immunity grounds, I would dismiss the appeal for lack of jurisdiction. Gross v. Pirtle, 245 F.3d 1151, 1157 (10th Cir.2001) (“If we determine the district court’s conclusion rests on findings of evidence sufficiency, we must dismiss for lack of jurisdiction.”).
In addition to the jurisdictional issue, the majority opinion is erroneous in three key respects. First, the majority erroneously extends the holding in Brigham City v. Stuart, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), which authorizes “law enforcement officers [to] enter a home without a warrant to render emergency assistance to an injured occupánt or to protect an occupant from imminent injury,” id. at 403, 126 S.Ct. 1943, to circumstances where “officers reasonably believe that some actor or object in a house may immediately cause harm to persons or property not in or near the house,” Maj. Op. at 1071 (italics in original). In doing so, the majority effectively dispenses not only with the warrant requirement, but also with the critical requirement of probable cause, for what, at bottom, is simply “the paradigmatic entry into a private dwelling by ... law enforcement offieer[s] in search of the fruits[,] instrumentalities^ or perpetrators] of crime.” Michigan v. Tyler, 436 U.S. 499, 504, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). For exigency to justify a warrantless entry into a dwelling in situations where, as here, law enforcement officers are seeking to detain and question a suspect, it must be coupled with probable cause. Second, the majority errs in concluding that the defendants’ search of plaintiffs home was justified by the protective sweep doctrine. Not only does Tenth Circuit precedent fail to support the extension of the protective sweep doctrine to non-arrest situations involving exigent circumstances, defendants have not suggested or produced any evidence to support a finding that a protective sweep was warranted in this case. Third, the majority seriously errs in concluding that the defendants’ in-home seizure of Chris Armijo was justified under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
I
The parties’ summary judgment pleadings reveal the following relevant facts. At approximately 10:30 a.m. on September 22, 2006, an anonymous juvenile male telephoned MVRDA, the agency that handled 911 calls for the Las Cruces, New Mexico, Police Department, and advised that a student at Ohate High School (OHS) was carrying a bomb and a firearm in a back *1077 pack. App. at 32, 56. MVRDA was unable to trace the call. Id. at 32. The call represented the third or fourth bomb threat that had been made regarding OHS in the span of a few days. Id. at 56. On at least one of the previous occasions, the police evacuated students from OHS and searched student backpacks for bombs. Id. at 32. No bombs were found. Id.
Charles Hook, a Las Cruces police officer assigned to OHS as a School Resources Officer, directed the principal of OHS, Joyce Aranda, “to place the students in lockdown, that is, not allow them to leave the school.” Id. at 72. In making this decision, Hook was not only aware of the circumstances of the previous bomb threats, he was also privy to two pieces of additional information. First, he had spoken with two female students at OHS earlier that morning who reported having overheard a conversation the day before between rival gang members “stat[ing] that they would call in a bomb threat and, when students evacuated, there would be either a gun fight between gangs or a drive-by shooting.” Id. at 71. Second, earlier that morning Principal Aranda had received a telephone call “from a woman who identified herself as the mother of a son who attend[ed] Mayfield High School.” Id. “The woman told Principal Aranda that [a] boy named ‘Chris,’ ” a student at Mayfield High School who had previously attended OHS, “intended to call in a bomb threat to [OHS] that day.” Id. at 71-72. According to Hook, he “viewed the threat of a gunfight between rival gangs or a drive-by shooting perpetrated by one gang against another ... as a greater threat than the bomb threat.” Id. at 72.
At approximately 11:00 a.m. on September 22, 2006, MVRDA received another call, again from an anonymous juvenile male, stating that a bomb had been placed at OHS. Id. at 72. Upon learning of this second call, Hook “concluded that the person who made the bomb threat was observing the [OHS] building, noticed that [it] was not being evaeuated[,] and therefore made a second attempt to have the building evacuated by calling in the second bomb threat.” Id. at 72-73. Consequently, Hook continued to stand by his earlier direction that the school be placed in lock-down status. Shortly after learning of the second call, Hook “determined that [a former OHS student named] Chris Armijo ... was the only possible suspect in regards to making the bomb threats.” Id. at 73. According to Hook, Chris Armijo had “recently been expelled” from OHS, “had begun attending Mayfield High School and was known to be a member of the East Siders gang.” Id. Hook “went to the front office of [OHS] and obtained Chris Armijo’s address.” Id. Hook then “called th[at] address to other officers over the radio.” Id.
Robert Peterson, a Las Cruces police officer assigned to the “Targeting Neighborhood Threats Unit,” “proceeded to the Armijo residence ... in Las Cruces.” Id. at 56. Peterson and two other officers (Wallace Downs and Melissa Molina) arrived at the Armijo residence approximately twenty minutes after the second bomb threat was received. Id. The intention of Peterson and the other officers was to interview Chris Armijo “and determine whether or not his cell phone matched that of the individual who called in the bomb threat[s].” Id. Peterson knocked and announced at the front door of the Armijo residence for approximately “two to three minutes.” Id. “After knocking for two to three minutes” with no one answering, Peterson “tried the doorknob” and discovered that the front door of the residence “was unlocked.” Id. at 57. Peterson notified his sergeant, Gabriella Graham, “by radio that the door was unlocked.” Id.
*1078 Graham authorized Peterson, Downs and Molina to enter the Armijo residence. Id. According to Graham, “[t]he basis for [her] giving permission for the officers to enter the home, as opposed to obtaining a search warrant or waiting for an occupant to emerge or return, was exigent circumstances.” Id. at 62. More specifically, Graham concluded that a warrantless entry was reasonable due to the fact that OHS “was still under lockdown, with the combined threat of a bomb inside the school and a drive-by shooting outside of it and the fact that [they] had identified a probable suspect....” Id. at 63.
Peterson, Downs and Molina entered the Armijo residence. Id. at 57. As they did so, Peterson loudly yelled various phrases such as “ ‘Police Department,’ ‘Show Yourself,’ and ‘Let Yourself Be Known.’ ” Id. The officers proceeded to conduct a protective sweep of the residence. Id.
The parties differ as to the ensuing events. Peterson alleges that Chris Armijo came out of a bedroom and stated that he had been asleep, id., the officers then proceeded to interview Armijo and examine his cell phone, id. at 58, no search of the home was conducted, and the episode lasted approximately twenty minutes. Id.
According to Chris Armijo, he “was awoken by several police officers yelling and screaming at [him], and at least two of those officers were pointing a gun at [him].” Id. at 99. Chris Armijo further alleges that “[o]ne or more police officers pulled [him] out of bed” and “[o]ne of the officers handcuffed [him] and took [him] outside to the porch” while the other officers went back inside the house for approximately five minutes. Id.
It is uncontroverted that the police ultimately concluded that Chris Armijo’s cell phone did not match the phone number that was used to make the two bomb threats, and thus they concluded Chris Armijo was not responsible for making the two bomb threats.
II
In their motion for summary judgment, defendants argued they were entitled to qualified immunity as to plaintiffs § 1983 claims because they “were facing exigent circumstances which left them with no choice but to enter the home without a warrant in order to search for” Chris Armijo. Id. at 48. In her response to defendants’ summary judgment motion, plaintiff argued, in pertinent part, that “there [we]re disputed material facts” that prevented the grant of summary judgment in favor of defendants. Id. at 82. In particular, plaintiff argued that a reasonable jury could find that defendants lacked an objectively reasonable basis for believing there was an immediate need to enter her home in order to protect their lives or the lives of others. Id. at 86-89.
When the district court subsequently denied defendants’ motion for summary judgment, it stated, in pertinent part:
Having considered the parties’ arguments and evidence, the Court finds that material facts underlying a determination of whether Defendants’ conduct was reasonable under the circumstances are in dispute. [Footnote: For example, although Defendants contend that the entry into Plaintiffs’ home was justified by exigent circumstances, Plaintiffs point to evidence showing Defendants did not have objectively reasonable grounds to believe that there was an immediate need to protect lives.] Thus, the Court is unable to conclude whether Defendants’ warrantless entry into Plaintiffs’ home was reasonable. Summary judgment on qualified immunity grounds is not appropriate under these circumstances. See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. *1079 2002) (explaining that summary judgment based on qualified immunity is properly denied where there exist unresolved factual disputes relevant to the immunity analysis) (citation omitted); see also Thomas v. Roach, 165 F.3d 137, 143 (2nd Cir.1999) (stating that summary judgment on qualified immunity is not appropriate where material facts determinative of reasonableness are in dispute). Consequently, Defendants’ motion for summary judgment on Plaintiffs’ § 1983 claims will be denied.
Id. at 123-24.
Ill
Casting aside the district court’s analysis, the majority concludes “we have jurisdiction to consider whether the Defendants have qualified immunity” by “[rjelying [solely] on Ms. Armijo’s version of the facts....” Maj. Op. at 1070. Although I do not question our authority to do so, I disagree that plaintiffs version of the facts reveals no constitutional violations. Indeed, I am of the view that the majority has misanalyzed each of the constitutional violations alleged by plaintiff.

a) Exigent circumstances

“[P]rivate dwellings” are “ordinarily afforded the most stringent Fourth Amendment protection.” United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Consequently, a warrantless entry into a home by a government official is “presumptively unreasonable.” Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (internal quotation marks and citations omitted); see Michigan v. Tyler, 436 U.S. 499, 506, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (noting that “[s]earches for administrative purposes, like searches for evidence of crime, are encompassed by the Fourth Amendment.”). “[B]ecause,” however, “the ultimate touchstone of the Fourth Amendment is ‘reasonableness,’ the warrant requirement is subject to certain exceptions.” Brigham City, 547 U.S. at 403, 126 S.Ct. 1943. In particular, the Supreme Court has recognized several types of exigencies that may “obviat[e] the requirement of a warrant....” Id. (citing cases).
Typically, where criminal law enforcement officers are involved, any such exigency must be coupled with probable cause. See Kirk v. Louisiana, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (per curiam) (“[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.”). That is because the usual purpose of criminal law enforcement officers entering a home is to either seize a suspect or to search for incriminating evidence. Cf. Mincey v. Arizona, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (“[A] warrantless search must be ‘strictly circumscribed by the exigencies which justify its initiation ----’ ”) (quoting Terry v. Ohio, 392 U.S. 1, 25-26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). If, however, the exigency motivating the warrantless entry by criminal law enforcement officers “is the need to assist persons who are seriously injured or threatened with such injury,” Brigham City, 547 U.S. at 403, 126 S.Ct. 1943, i.e., so-called “emergency situation[s],” id. at 402, 126 S.Ct. 1943, there is no accompanying probable cause requirement. Cortez v. McCauley, 478 F.3d 1108, 1124 n. 21 (10th Cir.2007).
Applying these principles to the facts alleged by plaintiff, the majority concedes that no one inside plaintiffs home was “seriously injured or threatened with such injury.” Brigham City, 547 U.S. at 403, 126 S.Ct. 1943; see Maj. Op. at 1071 (“Here, officers acted to protect not the house’s occupants.... ”). Rather than re *1080 jecting the applicability of Brigham City’s emergency situation exception and instead considering whether the facts alleged by plaintiff fall within the typical exigent circumstances exception (with its requirement of probable cause), the majority presses forward and concludes, remarkably, that the emergency situation exception recognized in Brigham City “also justifies warrantless entries into a house to stop a person or property inside the house from immediately harming people not in or near the house.” Maj. Op. at 1071 (italics in original).
The majority’s new exception, however, bears little, if any, relation to the emergency situation exception recognized in Brigham City. Whereas Brigham City’s exception allows law enforcement officials to enter a home without a warrant in order to physically aid or protect a victim or potential victim located inside, the majority’s new exception authorizes law enforcement officers to enter a home without a warrant in order to seize a suspected criminal. In other words, the focus of the exception shifts from aiding a victim or protecting a potential victim to seizing a potential criminal suspect. But the most troubling aspect of the majority’s new exception is that, by purportedly extending Brigham City, it simultaneously dispenses with the requirement of probable cause. Thus, under the majority’s newly recognized exception, law enforcement officials may now enter a home without a warrant or probable cause and presumably seize an occupant thereof so long as they have some type of “objectively reasonable basis,” Maj. Op. at 1070, short of probable cause, for believing that such occupant poses an immediate threat of harm to “people not in or near the house,” id. at 1071.
In my view, the only constitutionally permissible basis for defendants’ warrant-less entry into plaintiffs home would be a combination of “probable cause plus exigent circumstances....”[1] Kirk, 536 U.S. at 638, 122 S.Ct. 2458. More specifically, defendants’ warrantless entry into plaintiffs home could survive Fourth Amendment scrutiny only if defendants had a particularized and objective basis for suspecting that Chris Armijo was responsible for the bomb threats, United States v. Ledesma, 447 F.3d 1307, 1316 (10th Cir.2006) (describing probable cause requirement), and the urgency of the situation was “ ‘so compelling that the warrantless [entry] [wa]s objectively reasonable under the Fourth Amendment.’ ” Brigham City, 547 U.S. at 403, 126 S.Ct. 1943 (quoting Mincey, 437 U.S. at 393-94, 98 S.Ct. 2408); see United States v. Gambino-Zavala, 539 F.3d 1221, 1225 (10th Cir.2008) (indicating that exigent circumstances exist when “ ‘the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of ... others ....’”) (quoting United States v. Najar, 451 F.3d 710, 718 (10th Cir.2006)).
Significantly, however, defendants have never argued that they had probable cause. And, even if they had, I would conclude that genuine issues of material fact exist that preclude the entry of summary judgment on the issue of probable cause. See generally Thomson v. Salt Lake County, 584 F.3d 1304, 1326 n. 2 (10th Cir.2009) (noting that genuine issues of material fact regarding the existence of probable cause can exist that preclude the entry of summary judgment on qualified immunity grounds).
As for the question of “whether exigent circumstances existed to excuse a warrant- *1081 less [entry],” that too “is a question for the jury provided that, given the evidence on the matter, there is room for a difference of opinion.” Ingram v. City of Columbus, 185 F.3d 579, 587 (6th Cir.1999); cf. Bruner v. Baker, 506 F.3d 1021, 1028 (10th Cir.2007) (noting that “the question whether an officer had probable cause for an arrest” is a proper issue for the jury “ ‘if there is room for a difference of opinion.’ ”) (quoting DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir.1990)). In moving for summary judgment, defendants in this case argued that they “were facing exigent circumstances,” in particular “an immediate need to protect lives,” “which left them with no choice but to enter [plaintiffs] home without a warrant in order to search for [Chris Armijo].” App. at 48. Plaintiff did not seriously dispute the portion of defendants’ statement of facts describing the general events that preceded the officers’ warrantless entry into her home. She did, however, dispute whether those facts created exigent circumstances:
The Defendants allege that because they were concerned about the bomb scare, they had to immediately find [Chris Armijo] and question him. Yet they apparently did not believe the bomb scare was legitimate. Instead of evacuating the school in order to secure the safety of the students, they kept the school in lockdown. The students were required to remain inside the school instead of outside. It is incredible to believe the Defendants believed there was a bomb in the school when SRO Hook kept the students inside. Since the Defendants apparently did not believe the bomb threat was real, they had sufficient time to further their investigation. They could have called Mayfield High School to confirm whether [Chris Armijo] was a student [there]. They could have called [his] mother to ask for consent to enter and search her home for [him]. When Mrs. Armijo learned that the police were at her home, she immediately left work to get home. When she arrived and found no police, she called the police department to inquire about why the police were at her home. She wanted to know what had happened. There is no reason to believe that she would not have cooperated with the police had they requested permission to enter her home. They could have and most likely did cordon off the school entrances, so that no one could come in and no one could go out.
App. at 87-88.
Although the district court agreed with plaintiff that reasonable jurors could differ on whether the evidence gave rise to exigent circumstances, the majority summarily rejects that position on the grounds that “[plaintiffs’ arguments about investigatory motivations and about how seriously the officers credited the threats are irrelevant.” Maj. Op. at 1071. According to the majority, the Supreme Court’s decision in Brigham City indicates that “[w]hen circumstances objectively justify the officers’ actions, we do not consider the officers’ subjective motivations.” Maj. Op. at 1071.
Although I agree that Brigham City requires us to ignore any subjective “investigatory motivations,” I disagree that it precludes us from considering “how seriously the officers credited the threats.... ” Id. Surely we can look at the objective information the officer had and also look at the actions they took in response to that information. In Brigham City, the defendants argued that the challenged warrant-less entry and search was unreasonable because, in part, the entering “officers were more interested in making arrests than quelling violence.” 547 U.S. at 404, 126 S.Ct. 1943. The Supreme Court rejected that argument, holding that “[t]he officer’s subjective motivation [for making a warrantless entry] [wa]s irrelevant.” Id. Here, in contrast, plaintiff argues, and I *1082 agree, that a relevant factor, indeed perhaps the key factor, in assessing whether the officers had an objectively reasonable basis to believe there was an immediate need to enter plaintiffs home in order to protect the lives or safety of the students at the high school was the perceived legitimacy of the bomb threats. As plaintiff noted in her response to defendants’ summary judgment motion, the actions of the defendants, particularly Officer Hook, in placing the high school in “lock-down” mode rather than evacuating the students clearly suggest defendants did not view the bomb threats as legitimate, but rather as a ruse. Such a conclusion is bolstered by the uncontroverted evidence indicating that the school had, shortly prior to the day at issue, received two or three false bomb threats.
In turn, I fully agree with plaintiff and the district court that, in light of this evidence, a jury could reasonably find that the defendant officers lacked an objectively reasonable basis for believing there was an immediate need to enter plaintiffs home in order to protect the lives or safety of the students. To be sure, the evidence is uncontroverted that defendants took seriously the possibility that the bomb threats were intended as a ruse to evacuate the students in order to facilitate a drive-by shooting or other gang-related violence. But defendants fail to explain, given the fact the students were locked down safely inside the school, why it was necessary to immediately enter plaintiffs home without a warrant.[2] As I see it, reasonable jurors could conclude that a combination of other tactics (e.g., simultaneously surveilling both the high school and plaintiffs house) would have sufficed to keep any threat in check until a search warrant for plaintiffs home could have been obtained (or, as plaintiff suggests, until the defendants could have contacted plaintiff and asked for consent to enter her home). As a result, I believe the proper approach was the one adopted by the district court, i.e., denying defendants’ motion for summary judgment and allowing plaintiffs claims regarding the constitutionality of the warrantless entry and ensuing search and seizure to proceed further.

b) The search of the house

According to plaintiffs version of the facts, the defendant officers handcuffed Chris Armijo, removed him to the porch of the home, and then searched the home for approximately five minutes. Purportedly accepting these facts as true[3], the majority characterizes, and ultimately blesses, the search of the home as a protective sweep. This conclusion is without legal support.
In Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the Supreme Court explained that “[a] ‘protective sweep’ is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to *1083 a cursory visual inspection of those places in which a person might be hiding.” Since Buie, some circuits have extended the protective sweep doctrine to non-arrest situations, so long as the officers latujully entered the residence at issue. E.g., United States v. Caraballo, 595 F.3d 1214, 1224 (11th Cir.2010) (citing cases).
Although the majority’s opinion suggests that this circuit has likewise extended the protective sweep doctrine, that conclusion is far from clear. Between Buie’s issuance in 2000 and December 2006, this court repeatedly refused to extend the protective sweep doctrine beyond situations involving arrests. See United States v. Torres-Castro, 470 F.3d 992, 997 (10th Cir.2006) (authorizing protective sweep that occurred prior to arrest of defendant, but recognizing and adhering to the longstanding Tenth Circuit rule that “protective sweeps must be performed incident to an arrest”). In January 2007, a panel of this court suggested, notwithstanding existing Tenth Circuit precedent, that “exigent circumstances may have justified a search of [the defendant’s] home as a sweep for potential victims,” and remanded the case to the district court for further consideration of that issue. United States v. Walker, 474 F.3d 1249, 1254 (10th Cir.2007). At no point since the remand in Walker has this court revisited the suggestion made in Walker.
Even assuming, for purposes of argument, that Walker extended the protective sweep doctrine to non-arrest situations involving exigent circumstances, the doctrine has no applicability to the case at hand. To begin with, there has been no suggestion by defendants, let alone the production of any evidence that would support a reasonable factual finding, that the officers at plaintiffs home were concerned that individuals other than Chris Armijo were in the house and posed some type of threat. Indeed, defendants deny having conducted any sweep or other search of the home. Further, even if defendants had argued the necessity of performing a protective sweep, reasonable persons could conclude that the length of the purported search, i.e., five minutes, exceeded the time necessary to accomplish the “cursory visual inspection” that defines a true “protective sweep.” Buie, 494 U.S. at 327, 110 S.Ct. 1093. Finally, although the majority concludes that defendants “satisfactorily confined the search to only those places inside the home where an emergency would reasonably be associated,” Maj. Op. at 1073 (internal quotations and citation omitted), the truth of the matter is that we simply don’t know at this point what the scope of the alleged search was. As noted, defendants wholly deny conducting any search of plaintiffs home. In contrast, Chris Armijo’s affidavit, submitted by plaintiff in opposition to defendants’ motion for summary judgment, indicates that “[o]ne or more police officers pulled [him] out of bed” and “[o]ne of the officers handcuffed [him] and took [him] outside to the porch” while the other officers went back inside the house for approximately five minutes. App. at 99. Thus, genuine issues of material fact exist as to the scope of the alleged search.

c) The seizure of Chris Armijo

Plaintiff alleges that Chris Armijo was illegally seized by the defendant officers when he was handcuffed, removed to the porch of the home, and detained while the officers conducted a search of his home. Astoundingly, the majority concludes that this was not an arrest, but rather a permissible “stop” under Terry.[4]
*1084 At issue in Terry was the constitutionality of a police officer’s “on-the-street stop, interrogation] and pat down for weapons” of individuals he had observed and suspected of planning to rob a nearby store. 392 U.S. at 12, 88 S.Ct. 1868. In addressing these issues, the Court noted it was “dealing] ... with an entire rubric of police conduct — necessarily swift action predicated upon the on-the-spot observations of the officer on the beat — which historically ha[d] not been, and as a practical matter could not be, subjected to the warrant procedure.” 392 U.S. at 20, 88 S.Ct. 1868. Focusing first on the officer’s decision to approach and interrogate the men, the Court concluded the officer was “discharging” a “legitimate investigative function,” i.e., he approached the men “for purposes of investigating possibly criminal behavior even though there [wa]s no probable cause to make an arrest.” Id. at 22, 88 S.Ct. 1868. As for the officer’s pat down of one of the individuals in particular, the Court “conclude[d] that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.” Id. at 27, 88 S.Ct. 1868. In other words, the Court stated, “[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Id.
Not surprisingly, we recently emphasized that “Terry generally does not apply within one’s home.” Harman v. Pollock, 586 F.3d 1254, 1262 n. 2 (10th Cir.2009). In doing so, we cited with approval the Ninth Circuit’s oft-repeated explanation that “Terry’s twin rationales for a brief investigatory detention — the evasive nature of the activities police observe on the street and the limited nature of the intrusion — appear to be inapplicable to an encounter at a suspect’s home.” United States v. Washington, 387 F.3d 1060, 1067 (9th Cir.2004) (citation omitted). In other words, we recognized, in pertinent part, the longstanding principle that the reasonable expectation of privacy in one’s home is far greater than the expectation of privacy one has in activities conducted in public. E.g., United States v. Knotts, 460 U.S. 276, 281, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) (“A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.”).
Although the majority pays lip service to Harman, it nevertheless asserts that “when officers search a house pursuant to a warrant, they may detain an occupant if they have reasonable articulable suspicion under Terry.” Maj. Op. at 1073. But the sole authority cited by the majority, Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), simply does not support that proposition. In Summers, the question at issue was the constitutionality of the detention of an individual who was observed leaving a home that was about to be searched pursuant to a warrant. The detention began outside the home and continued, inside the home, while the police searched the premises. Nowhere in Summers did the Court indicate that the detention was authorized by Terry. Rather, the Court explained that “[i]f the evidence that a citizen’s residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen’s privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his *1085 home.” Id. at 704-05, 101 S.Ct. 2587. “Thus, for Fourth Amendment purposes, [the Court] h[e]ld that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.” Id. at 705, 101 S.Ct. 2587.
The majority also suggests that “[j]ust as exigent circumstances permit a warrantless home entry, emergencies justify a stop in the home.” Maj. Op. at 1073. But again, the sole authority cited by the majority in support of this proposition, i.e., Walker, 474 F.3d at 1252-53, says nothing of the sort. To be sure, Walker notes that “[a] warrantless entry into a home may be justified ... in certain exceptional circumstances,” and proceeds to cite three Supreme Court cases that either support the general principle or provide examples of circumstances in which warrantless entry is justified. Id. (citing Coolidge v. New Hampshire, 403 U.S. 443, 474-75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Brigham City, 547 U.S. at 403, 126 S.Ct. 1943; Georgia v. Randolph, 547 U.S. 103, 116 n. 6, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006)). But nowhere does Walker remotely suggest, let alone hold, that “emergencies justify a stop in the home.” Maj. Op at 1073. Consequently, the majority’s suggestion that there are “strict rules governing warrantless entries enabling ordinary investigative seizures,” id. at 1074, but “more flexible” rules governing “seizures supported by exigent circumstances,” id. at 1074, is simply wrong.
At bottom, it is absurd to suggest that the defendant officers’ seizure of Chris Armijo was justified under Terry. The undisputed evidence in this case indicates that the defendant officers, after conducting an initial investigation, believed that Chris Armijo was responsible for the two bomb threats and they proceeded to plaintiffs home intending to interview him and examine his cell phone. It is further undisputed that the defendant officers did not take the time to obtain a search warrant for plaintiffs home or an arrest warrant for Chris Armijo. Consequently, under clearly established federal law, the only way they could enter plaintiffs home was by consent, which did not occur, or by way of a combination of probable cause and exigent circumstances. E.g., Kirk, 536 U.S. at 638, 122 S.Ct. 2458; Payton, 445 U.S. at 587-88, 100 S.Ct. 1371; United States v. Reeves, 524 F.3d 1161, 1166 (10th Cir.2008) (noting that “Payton’s protections apply to all Fourth Amendment seizures of persons inside their homes,” and that “labeling an encounter in the home as either an investigatory stop or an arrest is meaningless because Payton’s requirements apply to all seizures”).
Unfortunately, the majority ignores these well-established principles and reaches a conclusion that, until rightly overturned, threatens to undermine critical Fourth Amendment protections by essentially eviscerating any constitutional distinction between a law enforcement officer entering a residence to conduct an investigation and a law enforcement officer stopping a suspect on the street for questioning.
IV
Plaintiff alleges that defendants violated the Fourth Amendment when they entered her home without a warrant. Although exigency based on bomb threats is alleged by defendants as the basis for their warrantless entry into plaintiffs home, the direction twice given by Hook to Principal Aranda to keep the students in their school building places the factual basis for defendants’ alleged exigency into dispute. This factual dispute should result in our *1086 dismissal of this appeal for lack of jurisdiction.

. Curiously, the majority acknowledges these principles not in its discussion of the defendants' warrantless entry into plaintiff's home, but rather in its discussion of the defendants' seizure of Chris Armijo. Maj. Op. at 1073.

. Although the majority characterizes the "threatened attacks” as "imminen[t],” Maj. Op. at 1072, the uncontroverted evidence suggests otherwise. As I have noted, the evidence clearly indicates that the defendants did not view the bomb threats as credible, but rather as a ruse for evacuating the high school and facilitating some other type of violent attack. Further, reasonable jurors could conclude that defendants’ actions in locking down the high school prevented any such other attacks from becoming imminent.

. In discussing the search of the house, the majority draws inferences that are neither favorable to plaintiff nor even argued by defendants. For example, the majority infers, based on the defendants’ suspicions that Chris Armijo was a gang member and that the bomb threats "were part of the back and forth between rival gangs,” that "a reasonable officer could suspect that [Chris] Armijo might have accomplices” inside plaintiff’s home. Maj. Op. at 1072.

. To the extent the parties in this case suggest that the seizure of Chris Armijo was a Terry stop, they are obviously mistaken, and we are in no way bound by their positions. E.g., Harsco Corp. v. Renner, 475 F.3d 1179, 1190 (10th Cir.2007) ("To be sure, this court is not *1084 bound by the parties' stipulations regarding questions of law.... ”).