KELLY, Circuit Judge.
Defendants-Appellants, several municipal law enforcement officers, appeal from the district court’s denial of qualified immunity in this civil rights action under 42 U.S.C. § 1983.
Plaintiff-Appellee Martha Armijo sued the officers for violating the Fourth Amendment when the officers entered and searched her home and detained her son, Christopher Armijo Sanchez. On summary judgment, the district court denied qualified immunity, citing material facts in dispute. Because under any view of the facts the officers did not violate the Fourth *1068 Amendment, they deserve qualified immunity. We reverse.

Background

We set forth Plaintiffs version of the facts.
I. Gangs and Anonymous Callers Threatened Oñate High School.
On September 22, 2006, an anonymous caller made two bomb threats to Oñate High School in Las Cruces, New Mexico. StipApp. at 33-36. During the two months immediately preceding these calls, police officers assigned to the high school had dealt with various gang problems and multiple bomb and shooting threats. Stip. App. at 31-32, 102. Only three days before, an anonymous caller had made a bomb and shooting threat. Stip.App. at 32.
The morning of the threats, two female students predicted them to Oñate High School’s principal. StipApp. at 33. The students told the principal that the day before they had seen a fight between two rival gangs, the East Siders and the Sureños. Id. According to the students, the gang members said that they would bring guns to school the next day, call in a bomb threat to force the school to evacuate, and open fire on the students or start a gunfight when the students were outside. Id. Although the students did not know the gang members’ names, they recognized them from Oñate High School and assumed they referred to that school. Id.
Next, a woman identifying herself as the mother of a boy attending Mayfield High School called the principal of Oñate High School. StipApp. at 33-34. The woman said that her son told her that a male named Chris would call in a bomb threat to Oñate High School. StipApp. at 34. She said that Chris was a member of the East Siders gang and that Chris had formerly attended Oñate High School but recently started at Mayfield High School. Id. The principal told the police officer assigned to the school about these tips. Id.
Soon, at 10:35 a.m., a juvenile-sounding male called 911 and made the first bomb threat to Oñate High School. Id. The police officer at the school had spoken to the two female students, who repeated everything to him. StipApp. at 33. Because the officer viewed the shooting threats to be greater than the bomb threat, he told the principal to place the students under lock-down, so the students could not leave the school. StipApp. at 35.
When his sergeant arrived, the officer told her that Christopher Armijo was the only suspect. Stip.App. at 36-37. The officer believed that (1) Oñate High School had recently expelled Mr. Armijo and he now attended Mayfield High School, (2) Mr. Armijo was an East Sider, and (3) no other student named Chris had recently transferred between those schools. Id.
At 11:00 a.m., a juvenile-sounding male made another bomb threat to Oñate High School. StipApp. at 35-36. Like the pri- or call, this one was from a disconnected cell phone. StipApp. at 35. All cell phones can call 911, even if their service is disconnected, but disconnected phones are harder to trace than functioning phones. Id. The officer thought that the person making the threat had seen that the students had not left the building, which frustrated the shooting, and that he was calling a second time to try again. StipApp. at 36.
II. The Police Searched the House and Detained Mr. Armijo.
The officer then dispatched four other officers to Mr. Armijo’s home, which they believed was a gang hangout. StipApp. at 37. Ms. Armijo also lived there, although *1069 she was not at home. StipApp. at 101, 103. Three officers knocked on the front door and yelled “Police Department. Anybody in here?,” “Come to the door,” and “Let yourself be known” as loudly as they could for two to three minutes. StipApp. at 37-38. When no one answered, one officer then tried the doorknob and found it unlocked. StipApp. at 38.
The officers radioed a sergeant at the school. Id. From her own knowledge, the sergeant believed (Mate High School had recently expelled Mr. Armijo, that he now attended Mayfield High School, that expelled students might be angry with the school, and that bomb threats generally were made by angry or problematic students. StipApp. at 39A0. The sergeant thought Mr. Armijo was the only suspect and authorized entry. StipApp. at 40.
The officers entered. Id. They searched the home for Mr. Armijo and anyone else within, in part to ensure officer safety. StipApp. at 41. According to Mr. Armijo, he was sound asleep when the officers entered his bedroom. StipApp. at 99. Two officers pointed their guns in his face, several yelled at him to get up, one or more pulled him out of bed, one handcuffed him, and one took him out on his porch in his underwear and T-shirt. Id.
While Mr. Armijo was on the porch, the officers searched the home for about five minutes. Id. They questioned him and requested his cell phone, which he provided. StipApp. at 42. The officers checked the phone and the house’s land line. Id. After discovering that neither phone called in the threats, they removed the handcuffs and left. StipApp. at 42, 99. At most, the officers spent twenty minutes at the home. StipApp. at 43, 58. When they left, the school was still under lock-down. Stip. App. at 43.
III. The District Court Denied the Officers Qualified Immunity.
The district court held in a brief order that an issue of material fact as to the reasonableness of the officers’ conduct precluded summary judgment. Armijo v. Las Cruces Police Officers, No. 09-90 RHS/ CEG, slip op. at 3 (D.N.M. Apr. 9, 2009) (StipApp. at 123). The court did not discuss the factual disputes except one example: “evidence showing Defendants did not have objectively reasonable grounds to believe there was an immediate need to protect lives.” Id. The officers appeal the denial of qualified immunity, and other district court decisions.[1] Stip.App. at 125-26.
Listing “the facts that the district court assumed when it denied summary judgment” is “ ‘extremely helpful to a reviewing court.’ ” Johnson v. Jones, 515 U.S. 304, 319, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (citation omitted). When a district court does not list the material disputed facts, “a court of appeals may have to undertake a cumbersome review of the record to determine” those facts. Id. The better practice is to identify in some way the facts precluding qualified immunity.

Discussion

I. Jurisdiction
“[A] district court’s denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable ‘final decision’ within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.” Mitchell *1070 v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Our jurisdiction is limited to “whether or not certain given facts showed a violation of ‘clearly established law.’ ” Johnson, 515 U.S. at 311, 115 S.Ct. 2151 (citation omitted). When a district court denies qualified immunity because of a factual dispute, “that finding is not jurisdictionally dispositive on appeal” if the defendants argue that immunity applies even under the plaintiffs version of the facts. Eidson v. Owens, 515 F.3d 1139, 1145 (10th Cir.2008). Relying on Ms. Armijo’s version of the facts, we have jurisdiction to consider whether the Defendants have qualified immunity.
II. Qualified Immunity
We review de novo a district court’s decision to deny a summary judgment motion that asserts qualified immunity. Eidson, 515 F.3d at 1145. The officers deserve summary judgment “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c)(2).
Qualified immunity “protects governmental officials from liability for civil damages insofar as their conduct does not violate ‘clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Pearson v. Callahan, — U.S. -, -, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (citation omitted). The qualified immunity inquiry has two elements: whether a constitutional violation occurred, and whether the violated right was “clearly established” at the time of the violation. Pearson, 129 S.Ct. at 815-16. We begin with the first element, whether the officers’ entry, search, and detention violated the Fourth Amendment. Cf. Pearson, 129 S.Ct. at 818.
III. Exigent Circumstances Justified the Entry.
The Fourth Amendment provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against .unreasonable searches and seizures, shall not be violated.” U.S. Const. amend IV. “[S]earches and seizures inside a home without a warrant are presumptively unreasonable.” Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). “[W]arrants are generally required to search a person’s home or his person unless ‘the exigencies of the situation’ make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.” Mincey v. Arizona, 437 U.S. 385, 393-94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (citations omitted). The officers bear the burden of establishing that the threats posed exigent circumstances justifying the warrantless entry. United States v. Reeves, 524 F.3d 1161, 1169 (10th Cir.2008).
A. The Scope of the Exigent Circumstances Exception
“One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury.” Brigham City, Utah v. Stuart, 547 U.S. 398, 403,126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). That exigency exists when “(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is [sic ] reasonable.” United States v. Najar, 451 F.3d 710, 718 (10th Cir.2006). In such an emergency, officers do not need probable cause. Cortez v. McCauley, 478 F.3d 1108, 1124 & n. 21 (10th Cir.2007) (en banc). The Supreme Court illustrated that “police may enter a home without a *1071 warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened -with such injury.” Brigham City, 547 U.S. at 400, 126 S.Ct. 1943 (emphasis added).
Here, officers acted to protect not the house’s occupants, but the students and staff at a nearby high school. We must decide whether the exigent circumstances exception only justifies warrantless entries into a house to aid a potential victim in the house, or if it also justifies warrantless entries into a house to stop a person or property inside the house from immediately harming people not in or near the house.
The Fourth Amendment’s touchstone is reasonableness in the totality of the circumstances. Would-be attackers and victims are frequently not in the same place, yet a requirement that they must be for exigent circumstances to occur could hamper law enforcement and compromise public safety. See Mora v. City of Gaithersburg, Md., 519 F.3d 216, 225-26 (4th Cir.2008) (deciding that exigent circumstances justified warrantless entry to search the home of a detained man who minutes before threatened to massacre his co-workers); United States v. Bell, 500 F.3d 609, 613-15 (7th Cir.2007) (finding that exigent circumstances justified searching a kidnapper’s hotel room safe to try to locate the victim).
We therefore hold that the exigent circumstances exception permits warrantless home entries when officers reasonably believe that some actor or object in a house may immediately cause harm to persons or property not in or near the house.
In applying this exception, we “ ‘evaluate the circumstances as they would have appeared to prudent, cautious, and trained officers.’ ” Reeves, 524 F.3d at 1169 (citation omitted). When circumstances objectively justify the officers’ actions, we do not consider the officers’ subjective motivations. Brigham City, 547 U.S. at 404, 126 S.Ct. 1943. Ms. Armijo’s arguments about investigatory motivations and about how seriously the officers credited the threats are irrelevant to the extent that they focus on the officers’ credibility and personal motivations. Aplee Br. at 13-14,16, 20-21.
B. The Threats Posed Exigent Circumstances.
“Exigent circumstances are frequently found when dangerous explosives are involved.” United States v. Lindsey, 877 F.2d 777, 781 (9th Cir.1989). The plausible reports of a bomb and a gun fight posed an emergency. The officers thus had an objectively reasonable basis to believe they immediately needed to protect the lives and safety of those at the high school.
Contrary to Ms. Armijo’s assertion, the officers’ choice to lock the school down, instead of evacuating it, did not show that no real bomb emergency existed. Aplee Br. at 20-21. The officers were between a rock and a hard place. They could either lock down the school, and risk leaving students exposed to a bomb, or evacuate the school, possibly sending the staff and students into gunfire as they exited. The officers made an on-the-ground risk assessment and a split-second judgment call. That the officers could not mitigate both risks simultaneously does not suggest that either was trivial or insubstantial. Both were 'urgent. We will not second-guess the officers’ decision about which risk was greater, nor their actions to deal with these risks. Thomson v. Salt Lake County, 584 F.3d 1304, 1318 (10th Cir.2009).
Moreover, “[Reasonable belief does not require absolute certainty ... the standard is more lenient than ... probable cause.” United States v. Gambino-Zava *1072 la, 539 F.3d 1221, 1225 (10th Cir.2008). At the same time, a claim of urgent needs or exigent circumstances must have some factual support. Cortez, 478 F.3d at 1124.
Here, the officers had a history of gang problems, two accounts of what might occur, and the bomb threats. Some information provided a link (albeit incorrectly) to Mr. Armijo: his name was “Chris,” they believed him to be an East Sider gang member, and he had recently changed schools. The officers could reasonably believe such information implicated Mr. Armijo. Stip.App. at 33-34, 36-40. This case goes beyond what we have held insufficient. E.g., Cortez, 478 F.3d at 1122-23 (the unsubstantiated double-hearsay allegation of a toddler and a lack of any imminent danger or destruction of evidence).
Ms. Armijo contends that the officers got their facts wrong. Stip.App. at 85. For example, she argues (1) that Mr. Armijo was not a gang member, (2) that he voluntarily withdrew from Oñate High School, and (3) that he never attended Mayfield High School. Stip.App. at 85, 98-99. Still, the Fourth Amendment evaluates reasonableness based upon what the officers reasonably believed at the time. It does not matter that, in retrospect, information provided to the officers was wrong, and that Mr. Armijo apparently had nothing to do with the threats. Michigan v. Fisher, — U.S. -, 130 S.Ct. 546, 549, — L.Ed.2d - (2009).
Ms. Armijo disputes that there was an exigent need to enter her house. The officers could have dispelled their suspicions without entering the home, she argues, by checking school records or questioning the informants further. Aplee Br. at 14, 19-20. Still, if the officers acted reasonably, they need not exhaust every avenue of dispelling suspicion. Perhaps more investigation would have been worthy. Then again, given the imminence of the threatened attacks, perhaps any delay would risk too much. The information the officers had was enough for a reasonable belief that exigent circumstances justified entry.
Moreover, the manner of the entry was reasonable. The officers knocked repeatedly and shouted to get attention. Stip.App. at 37-38. Only then did they enter. Stip.App. at 40. They did not force the door. Stip.App. at 38.
IV. Exigent Circumstances Justified the Officers’ Search.
After entering, the officers searched the house. Stip.App. at 41. Under Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), a “protective sweep” of a residence to ensure officer safety may take place only incident to an arrest. Id. at 334, 110 S.Ct. 1093; United States v. Walker, 474 F.3d 1249, 1254 (10th Cir.2007). As we discuss below, the officers did not arrest Mr. Armijo, so the search could not have been incident to an arrest. “The sweep may nevertheless have been proper under the exigent-circumstances doctrine” if reasonable grounds existed to search to protect the safety of someone besides the officers. Walker, 474 F.3d at 1254. In other words, if they had “a threat to a civilian’s safety.” Id.
An urgent need to protect those at the high school justified the officers’ five-minute search. Stip.App. at 41. The need to find and neutralize those behind the threats made the entry reasonable. Necessarily, then, the circumstances made a search for the suspect reasonable. Entering, but failing to look for the suspect, would do nothing to prevent an attack. The emergency thus justified the search separate and apart from concerns for officer safety.
We do not view the search in a vacuum. The officers reasonably suspected that (1) *1073 the threats were part of the back and forth between rival gangs, and (2) that Mr. Armijo was a gang member. From this, a reasonable officer could suspect that Mr. Armijo might have accomplices.
Even after they found Mr. Armijo, the officers could have reasonably believed that sweeping for accomplices would prevent Mr. Armijo from evading them. Or, they could suspect that these accomplices would-also threaten the school. After all, the officers thought Mr. Armijo might start a gunfight and detonate explosives. These offenses cry out for concerted action. Although we draw all reasonable inferences in Ms. Armijo’s favor, the evidence showing the reasonableness of the officers’ search of the home for dangerous persons is so apparent that to ignore it would be unreasonable.
Such a search must be “ ‘strictly circumscribed by the exigencies which justify its initiation.’ ” Mincey, 437 U.S. at 393, 98 S.Ct. 2408 (quoting Terry v. Ohio, 392 U.S. 1, 25-26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The officers satisfactorily “confined the search to only those places inside the home where an emergency would reasonably be associated,” that is, where the perpetrators could be. Najar, 451 F.3d at 720.
V. Exigent Circumstances Supported Detaining Mr. Armijo.
The parties suggest that Mr. Armijo’s detention was not an arrest, but an investigative detention under Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Aplt. Br. at 23-25; Aplee Br. at 19. Under Terry, “[a]n officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.” Cortez, 478 F.3d at 1115 (internal quotation marks and citation omitted).
A. Exigent Circumstances May Justify Intermediate Seizures.
The investigative detention category is shorthand for a broad range of seizures amounting to more than consensual encounters but less than arrests. Id. Terry's reasonable, articulable suspicion standard governs these diverse intrusions. Investigative detentions are permissible in some circumstances but not in others.
Absent exigent circumstances and probable cause, or a warrant, officers may not enter a home and seize an individual for routine investigatory purposes, no matter whether the seizure is an investigatory stop or an arrest. Payton, 445 U.S. at 590, 100 S.Ct. 1371. In that sense, Terry stops have no place in the home. Harman v. Pollock, 586 F.3d 1254, 1262 & n. 2 (10th Cir.2009); Reeves, 524 F.3d at 1166-67.
When officers search a house pursuant to a warrant, they may detain an occupant. Michigan v. Summers, 452 U.S. 692, 696, 703-05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Likewise, when officers lawfully arrest one occupant, officers may stop co-occupants as part of a Buie sweep. United States v. Maddox, 388 F.3d 1356, 1361-63 (10th Cir.2004). And, just as exigent circumstances permit a warrantless home entry, emergencies may justify a warrantless seizure in the home. Kirk v. Louisiana, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); Payton, 445 U.S. at 587-88, 100 S.Ct. 1371; Reeves, 524 F.3d at 1166-67; Walker, 474 F.3d at 1252-53.
B. The Emergency Justified Mr. Armijo’s Intermediate Detention.
The officers focused on the emergency and detained Mr. Armijo for the few minutes necessary to confirm or dispel their suspicions. Terry, 392 U.S. at 28, 88 S.Ct. 1868; Stip.App. at 41-42, 99. When *1074 the phones supported Mr. Armijo’s innocence, they left. Stip.App. at 42-43, 99. They did not question him about anything else. Terry, 392 U.S. at 30, 88 S.Ct. 1868. This is reasonable.
First, we agree with the parties that an investigative detention took place, notwithstanding that it occurred in the home. See Cortez, 478 F.3d at 1123 (seizure of Tina Cortez while in her home). The encounter was non-consensual, but it did not amount to an arrest. Although the officers displayed their guns, yelled, and took Mr. Armijo outside, the officers neither told Mr. Armijo that he was under arrest, nor placed Mr. Armijo in their patrol car, nor moved him to the police station, nor read him his Miranda rights. Stip.App. at 99. The seizure thus was an intermediate intrusion.
Second, exigent circumstances supported the seizure. The dual threats to the high school posed an emergency. To incapacitate the person suspected of making the threats, the officers needed to detain Mr. Armijo while they investigated further. Of course, the initial entry and brief search were based upon an emergency, so the seizure did not stem from an ordinary investigation. Cf. Payton, 445 U.S. at 587-88, 100 S.Ct. 1371.
Third, based on informants and then-own knowledge, the officers had reasonable articulable suspicion that Mr. Armijo might be involved. The tips pointed only at him. Together, these factors remove this case from the strict rules governing warrantless entries enabling ordinary investigative seizures, and places it within the more flexible realm of seizures supported by exigent circumstances.
In short, if the simultaneous threats justify the entry and the search, they also justify the object of those actions: neutralizing the threat. They officers had to stop the suspect immediately or risk the attacks. It would be unreasonable to permit the officers to enter and search, but forbid them from briefly detaining the object of them quest. That the officers ultimately cleared Mr. Armijo of suspicion does not alter their actions’ reasonableness. Cf. Illinois v. Wardlow, 528 U.S. 119, 126, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
VI. The Dissent Misplaces Its Concerns.
The dissent would hold that wé lack jurisdiction because of factual disputes. Yet, we have jurisdiction when immunity applies under a plaintiffs version of the facts. E.g., McBeth v. Himes, 598 F.3d 708, 714-15 (10th Cir.2010); Eaton v. Meneley, 379 F.3d 949, 955 (10th Cir.2004); Johnson v. Martin, 195 F.3d 1208, 1214 (10th Cir.1999).
The dissent further argues that a jury should resolve whether exigent circumstances existed. Dissent Op. at 1079-82. It suggests that because the officers did not evacuate the school, a jury could conclude that the officers viewed the bomb threats solely as a ruse to evacuate the school rather than as threats. Id. at 1081-82. According to the dissent, this calls into question whether the officers had an objectively reasonable basis for entering and searching Ms. Armijo’s home. Id. Rather than acting as they did, the officers could have surveilled the school and Ms. Armijo’s house while either getting a warrant or obtaining consent to enter the home. Id. at 1082.
Still, the officers acted within the wide range of objectively reasonable choices. Faced with simultaneous risks and incomplete information, the officers chose to lock the school down because they judged that evacuation posed a greater risk to the high school. Inferring from this that the officers viewed the bomb threat as trivial is unreasonable.
*1075 Nor were the officers required to try to dispel their suspicion and further verify their information. Contra id. at 1080-81. The Fourth Amendment does not require officers to use the least restrictive means to investigate a threat. If officers act reasonably, it does not require them to do more. Phillips v. James, 422 F.3d 1075, 1080 (10th Cir.2005).
According to the dissent, reasonable minds could differ on the seriousness of the emergency, and so this case requires a jury trial. Dissent Op. at 1075-76. That misstates the standard. In this context, a factual dispute goes to a jury if, under Plaintiffs facts, no reasonable officer could have believed that the emergencies justified their actions. Najar, 451 F.3d at 718. For the reasons stated, even under the Plaintiffs version of the facts, reasonable officers could have believed the situation justified the response that occurred.
The dissent alternatively posits that, no matter whether exigent circumstances existed, the officers needed probable cause to enter the home. Dissent Op at 1076, 1080 n. 1, 1079, 1082 n. 2, 1083-84. Not so. Officers do not need probable cause if they face exigent circumstances in an emergency. Brigham City, 547 U.S. at 402-07, 126 S.Ct. 1943; Cortez, 478 F.3d at 1124 & n. 21; Najar, 451 F.3d at 718.
The dissent next argues that any sweep is without support because our precedents permit protective sweeps only when incident to an arrest. Dissent Op. at 1082-83. Although this court has not explicitly endorsed a search in non-arrest emergencies, an objectively reasonable officer could conclude a five-minute search of the house to find and neutralize any accomplices is reasonable under these exigent circumstances. Walker, 474 F.3d at 1254.[2] After all, the officers were investigating threats of a planned gunfight and detonating a bomb— offenses that probably involve more than one person.
Last, the dissent cites cases forbidding warrantless, ordinary investigatory stops and arrests in the home. Dissent Op. at 1083-85. Those precedents do not forbid warrantless entries and stops during emergencies. They hold that the exigent circumstances exception applies if officers show more than the usual need to seize a suspect or preserve evidence. Kirk, 536 U.S. at 638, 122 S.Ct. 2458; Payton, 445 U.S. at 587-88, 100 S.Ct. 1371; Reeves, 524 F.3d at 1166-67.
Moreover, this court sitting en banc has held that investigative detentions may occur in the home, provided (1) that exigent circumstances exist and (2) that officers have reasonable suspicion. See Cortez, 478 F.3d at 1123. Here, officers entered and seized Mr. Armijo not during a routine investigation but in an emergency. The dissent’s concerns ultimately return to whether exigent circumstances existed. An emergency existed and, paired with sufficient factual suspicion, they make Mr. Armijo’s detention reasonable. Contrary to the dissent, this holding does not give officers carte blanche to ignore warrant requirements in non-emergency, routine investigations. Dissent Op. at 1085.
Because the officers did not violate the constitutional rights of the Plaintiff, the officers deserve qualified immunity.
REVERSED.

. The officers (1) appeal the denial of their motion to dismiss based on the applicable statute of limitations, (2) appeal the denial of summary judgment on their state law claims, and (3) argue that the City of Las Cruces bears no municipal liability. Aplt. Br. at 35-42; Stip.App. at 125-26. However, these decisions are not final orders triggering our appellate jurisdiction. 28 U.S.C. § 1291.

. Of course, it also was reasonable for those officers to sweep the house for their own protection — even though they did not at that moment plan to arrest an occupant. But we need not rely on this rationale because exigent circumstances (public safety) support what was done here.