**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 13, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MICHAEL DANTRASSY,

            Plaintiff-Appellee,

v.

EVERETTE VAN HOESEN, Sheriff,
in his individual capacity;
STEPHANIE RINGGOLD, Jail
Administrator, in her individual
capacity,

            Defendants-Appellants,

and

BOARD OF COUNTY
COMMISSIONERS OF KAY
COUNTY, OKLAHOMA,

            Defendant.

No. 10-6016
(D.C. No. 5:08-CV-00209-C)
(W.D. Okla.)

**ORDER AND JUDGMENT***

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

*       After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

At the time of the events in this case, plaintiff-appellee Michael Dantrassy was a pretrial detainee at the Kay County, Oklahoma Detention Center (KCDC). He sued Sheriff Everette Van Hoesen, then-KCDC Administrator Stephanie Ringgold, and the Board of County Commissioners under 42 U.S.C. § 1983, alleging that they had violated his constitutional rights while he was incarcerated. Dantrassy asserted four claims in his amended complaint, including a claim that defendants were deliberately indifferent to unsafe conditions of confinement at the jail, resulting in personal injuries when defendants failed to protect him from being struck by another inmate.

The district court granted summary judgment to defendants on three of Dantrassy's claims, but denied summary judgment to defendants on his conditions of confinement claim. Relevant to this appeal, the district court denied qualified immunity to defendants Van Hoesen and Ringgold on this claim, holding that there were genuine issues of material fact concerning their actions, and that Dantrassy had met his burden to produce facts showing that a violation of clearly established constitutional law had occurred. Aplt. App., Vol. II at 774-78. Defendants Van Hoesen and Ringgold appeal.

Appellants do not challenge the legal framework set out by the district court. The court correctly stated that "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Id.* at 770 (quoting

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (omission in *Farmer*; further quotation omitted)). Dantrassy "'"must show that he [was] incarcerated under conditions posing a substantial risk of serious harm," . . . and that the prison official was deliberately indifferent to his safety.'" *Id.* (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834)). Further, "'[a] prison official who "knows of and disregards an excessive risk to inmate health or safety" is deliberately indifferent for these purposes.'" *Id.* (quoting *Benefield*, 241 F.3d at 1271 (quoting *Farmer*, 511 U.S. at 837)). Dantrassy withstands appellants' assertion of qualified immunity "'if he can show that: 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right."'" *Id.* at 777 (quoting *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009) (quoting *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008)).

But what appellants do challenge is the district court's application of the law to the facts, arguing that the undisputed facts show that they are entitled to qualified immunity on Dantrassy's conditions of confinement claim. *See* Aplt. Opening Br. at 3-5. They state that they "accept the universe of facts presented by Dantrassy and accepted by the District Court as true for purposes of summary judgment, together with the facts otherwise undisputed by Dantrassy." *Id.* at 2. They contend, however, that this universe of facts does not establish a constitutional violation as a matter of law, *id.* at 17, and that a reasonable official

in their position would not understand that their actions would violate Dantrassy's constitutional rights, *id.* at 21. As framed, appellants have presented an abstract issue of law over which we jurisdiction. *See Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1069-70 (10th Cir. 2010).

We review de novo the district court's denial of qualified immunity. *Id.* at 1070. But "we must view the facts and draw reasonable inferences in the light most favorable to [Dantrassy,] the party opposing the summary judgment motion." *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (quotation omitted). We "lack[] jurisdiction in an interlocutory qualified immunity appeal to resolve *genuine* disputes of fact." *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996), and *Johnson v. Jones*, 515 U.S. 304, 313-18 (1995)).

The district court summarized the evidence as showing that Dantrassy was a pretrial detainee at KCDC for several months in 2005 and 2006. *See* Aplt. App., Vol. II at 760. The jail was overcrowded and underfunded. *Id.* at 760, 772. Appellant Van Hoesen stated in his deposition that he believed that the jail had been underfunded for a long time. *Id.* at 772. As a result of this underfunding, the facility deteriorated. *Id.* at 772-73. Many of the locks were faulty, so the inmates could not be locked down in their cells, and many of the guards were afraid to enter the pods where inmates were housed. *See id.* at 760, 770-71, 773. The most intimidating prisoners emerged as "pod bosses," *id.* at 760, 771, and the

guards used the pod bosses to keep order among the prisoners, *id.* at 760-61, 772, 773.

Appellant Van Hoesen stated in his deposition that the jail was unsafe for inmates and staff. *Id.* at 774-75. He further stated that an overcrowded facility which could not be locked down would present a substantial risk of harm to inmates. *Id.* at 775. He asserted, however, that his response to the safety risk was reasonable because staffing levels met state requirements, guards regularly monitored the pods, inmates were properly segregated, and faulty locks were repaired. *Id.* But Dantrassy presented evidence showing that the jail was cited for failing to maintain adequate staffing levels and to perform required hourly sight checks, that broken locks were not repaired, "and that conditions in the facility deteriorated to the point where 'pod bosses' arose." *Id.* at 775-76.

An inmate named Lerenzo Jones was the pod boss in the pod where Dantrassy was housed. *Id.* at 761, 771. The district court stated that Jones indicated in his deposition "that the KCDC staff all knew that he ran the pod and whenever there was a fight between the inmates or some sort of contraband was found in the pod, officers would ask Jones what was going on and they would instruct him to retrieve the contraband." *Id.* at 764-65; *see also id.*, Vol. I at 383 (Jones Deposition).

In April 2006, Jones struck Dantrassy, injuring him. *See id.*, Vol. II at 761. Jones prepared an affidavit stating that appellant Ringgold knew that he was the

pod boss and designated him as the pod supervisor. *Id.* at 763. Jones said that he would not have struck Dantrassy if Ringgold had not given him supervisory responsibilities. *Id.* at 763-64. He stated in his deposition that although Ringgold never specifically told him he was the pod boss, "she did say '[t]hings like you know you run this pod and you know you can resolve this matter.'" *Id.* at 765 (quoting Jones Deposition, Aplt. App., Vol. I at 384). We note that Dantrassy also stated in his deposition that appellant Ringgold called him her "headache," that she had told Jones to get Dantrassy "to chill out[,]" and that she had told Jones that she had moved Dantrassy into that pod so that Dantrassy would listen to Jones. *Id.*, Vol. I at 426.

The district court correctly stated that "[i]t has been clearly established since at least 1980 that 'an inmate . . . [has] a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates.'" *Id.*, Vol. II at 778 (quoting *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980)). The court also held that there was evidence that appellants were deliberately indifferent to plaintiff's safety because it was foreseeable to a reasonable officer that there was a substantial risk to inmate safety in a jail where the locks were inoperable and inmate enforcers were used, in violation of state law. *Id.*

Appellants may be found liable "'if [they] set in motion a series of events that [they] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights.'" *Buck v. City of Albuquerque*,

549 F.3d 1269, 1279-80 (10th Cir. 2008) (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (further quotation omitted)). Appellants focus on the undisputed fact that the jail was not on lockdown the day Jones struck Dantrassy, contending that they could not have known that Jones would strike Dantrassy. Their argument fails to come to grips with the evidence summarized by the district court or the court's legal analysis, however, and their argument is insufficient to show that they are entitled to qualified immunity. The facts summarized by the district court, including evidence showing that appellants failed to correct deficiencies at the jail but, instead, relied on inmate "pod bosses" to maintain order, clearly fall within the standard for causation established in Tenth Circuit law.

AFFIRMED.

Entered for the Court

Deanell R. Tacha
Circuit Judge