Cordy, J.
(dissenting). “We all see something different in the bottom of a tequila bottle. Such is life.” The motion judge’s erudite observations, made during the motion to suppress hearing about the Barnstable police officers’ actions at the defendant’s home, likewise ring true with regard to the emergency exception to the warrant requirement. It is because the court sees the emergency exception too narrowly as a reprieve from the warrant requirement that I respectfully dissent.
There are two particular points made by the court with which I disagree. The first point is that the officers, on arriving at the defendant’s home, were responding only to a potential emergency with regard to the defendant. In my view, the motion judge was correct in concluding that the emergency also applied to the ongoing and life-threatening state of the two patients, one at Cape Cod Hospital and one being “med-flighted” to Boston, and this case therefore does present the question whether the police may make an emergency entry to provide assistance to a person not in the home. I would hold that they may, and were, in this case, justified in doing so. Second, I disagree that the exigency to which the officers responded ended as soon as the defendant left his home for the hospital. Because I would hold that the emergency was ongoing, both for the defendant and the patients, the officers’ subsequent seizure of the tequila bottles was objectively reasonable under the circumstances. It is for these reasons that I agree with the motion judge that the officers’ actions fit squarely within the emergency exception, and I would hold that the motion to suppress was appropriately denied.
1. Discussion. “When reviewing a motion to suppress, we accept the judge’s subsidiary findings of fact absent clear error, but independently review the judge’s ultimate findings and conclusions of law” (quotations omitted). Commonwealth v. Jewett, 471 Mass. 624, 628 (2015). Where there has been an evidentiary *408 hearing, “we defer to the credibility findings of the judge, who had the opportunity to observe and evaluate the witnesses as they testified.” Commonwealth v. Peters, 453 Mass. 818, 823 (2009).
The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights provide that the right of individuals to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated. Warrantless searches and seizures inside of a home are presumptively unreasonable. See, e.g., Brigham City v. Stuart, 547 U.S. 398, 403 (2006); Commonwealth v. Townsend, 453 Mass. 413, 425 (2009). Such warrantless searches may be justified only in “specifically established and well-delineated exceptions” (quotation omitted). Arizona v. Gant, 556 U.S. 332, 338 (2009). One such exception exists in circumstances where the police reasonably believe that a search is required to deal with a life-threatening emergency. See Mincey v. Arizona, 437 U.S. 385, 393-394 (1978).
The emergency exception “applies when the purpose of the police entry is not to gather evidence of criminal activity but rather, because of an emergency, to respond to an immediate need for assistance for the protection of life” (quotation omitted). Commonwealth v. Snell, 428 Mass. 766, 774, cert. denied, 527 U.S. 1010 (1999). “The reason is plain: People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process” (quotation omitted). Commonwealth v. Ringgard, 71 Mass. App. Ct. 197, 201 (2008). Two strict requirements must be met before applying the exception: (1) the officers must have had objectively reasonable grounds to believe that an emergency existed; and (2) the conduct of the police after the entry must have been reasonable under all the circumstances. See Commonwealth v. McDermott, 448 Mass. 750, 766-767 (2007). The exception allows the police, with an objectively reasonable basis for concluding that an emergency exists, to be proactive, as “an officer is not like a boxing . . . referee, poised to stop a bout only if it becomes too one-sided.” Brigham City, 547 U.S. at 406. I fear that the court’s reading of the emergency exception may, in many life-threatening instances, relegate the Commonwealth to spectator status.
a. Scope of emergency exception. The court limits the scope of its analysis of the emergency exception to its application to the defendant, ignoring, contrary to the findings of the motion judge, the plight (known to the responding officers) of the two patients *409 at Cape Cod Hospital. Our consideration of the emergency exception should apply in equal measure to the defendant and to the patients. Despite the court’s assertions to the contrary, the evidence presented throughout the motion to suppress hearing fully supports the motion judge’s ultimate findings that the officers entered the defendant’s home “out of concern for the well being of the defendant and the two hospitalized individuals.”
In its restricted view of the motion judge’s findings, the court declines to address the emergency exception’s application to war-rantless entries for the purpose of providing emergency assistance to a person not actually present in the home. I would hold that the patients’ not being within the defendant’s home does not vitiate the basis for a warrantless entry and seizure on their behalf. Although the United States Supreme Court has not directly addressed the issue, its recent jurisprudence on the emergency exception to the warrant requirement is instructive.
The Supreme Court has had three instances to address the emergency exception to the warrant requirement: Mincey, supra;[1] Brigham City, supra;[2] and Michigan v. Fisher, 558 U.S. 45 (2009).[3] In each of those opinions, the Supreme Court draws from Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir. 1963), for *410 the premise of the emergency exception that “[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.” See Fisher, 558 U.S. at 47, quoting Brigham City, 547 U.S. at 403; Mincey, 437 U.S. at 392. Each of these cases presents a situation in which the purported emergency relates to an individual within the home to be searched by the police. They are not, for that reason, factually analogous to our case. However, the Court’s reasoning allows for an interpretation of the emergency exception that would apply whenever officers have objectively reasonable grounds to believe an emergency resonates from otherwise protected private property, whether it be related to aiding an injured person, preventing a shooting, extinguishing a fire, defusing a bomb, or ascertaining the cause of a life-threatening illness. See Wayne, supra. See also 3 W.R. LaFave, Search and Seizure § 6.6(a), at 619 (5th ed. 2012) (“[ejntry may be justified even though the endangered persons are not in the premises”).
Case law around the country and within the Commonwealth supports this view, as victims and would be threats, be they attackers or latent poisons, are frequently not in the same place.[4] It is an unnecessary requirement that they be so — a requirement *411 that compromises public safety and hampers law enforcement in fulfilling the purpose for which the emergency exception exists. See Fisher, 558 U.S. at 49, quoting Brigham City, 547 U.S. at 406 (“role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties”). Consequently, the motion judge did not err in concluding that the officers were seizing the bottles in response to an emergency that encompassed both the condition of the defendant who was being taken to the hospital and the condition of the patients who were already there.
b. Reasonableness of the seizure. The court again limits its analysis to whether the police were objectively reasonable in seizing the tequila bottles in response to only the defendant’s emergency. Because I agree with the motion judge that the emergency exception also applied to — and likewise was triggered by — the patients’ emergency in the hospital, our analysis should consider both. In any event, whether it be applied to the defendant, the patients, or both, the police acted objectively reasonably under the circumstances in seizing the bottles.
In determining whether exigent circumstances exist, we “evaluate the circumstances as they would have appeared to prudent, cautious, and trained officers” (quotation omitted). Armijo ex rel. Armijo Sanchez v. Peterson, 601 F.3d 1065, 1071 (10th Cir. 2010), cert. denied, 562 U.S. 1224 (2011). See Commonwealth v. Hall, 366 Mass. 790, 803 n.16 (1975). “An action is ‘reasonable’ under the Fourth Amendment, regardless of the individual officer’s state of mind, ‘as long as the circumstances, viewed objectively, justify [the] action. . . . The officer’s subjective motivation is irrelevant” (emphasis in original; citation omitted). Brigham City, 547 U.S. at 404. See Commonwealth v. Entwistle, 463 Mass. 205, 214 (2012), cert. denied, 133 S. Ct. 945 (2013). Reasonableness is to be “evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis” (emphasis added; quotation omitted). McDermott, 448 Mass. at 766. See Commonwealth v. McCarthy, 71 Mass. App. Ct. 591, 594 (2008) (indicating that reviewing court evaluates police action in its context and “not with twenty-twenty hindsight”). “Officers do not need ironclad proof of ‘a likely serious, life-threatening’ injury to invoke the emergency aid exception.” Fisher, 558 U.S. at 49. See Entwistle, supra at 214. It is commonly accepted that a “drug overdose is a serious medical emer *412 gency, often resulting in death when the afflicted person is not given timely and proper treatment.” McCarthy, supra.
According to the motion judge’s findings, when the officers entered the defendant’s home, their knowledge of the ongoing situation was minimal. They were aware that two individuals were in critical condition under the care of emergency room staff, and that one of them had been “med-flighted” to a Boston hospital. The defendant told them that he had been feeling ill all day, as well. Finally, in speaking with the defendant, the officers ascertained that the only thing that all three ill individuals had potentially shared was the tequila.
At that moment, the police officers, in evaluating all the circumstances, were justified in seizing the bottles. This is a situation in which there is more than just the mere existence of a potentially harmful circumstance. See Commonwealth v. Kirschner, 61 Mass. App. Ct. 836, 841-842 (2006). A timely medical response, namely the defendant leaving in an ambulance and the patients already being present in the hospital, did not obviate the need for intervention, as the presence of — and treatment by — medical personnel does not necessarily render an emergency over. See McCarthy, 71 Mass. App. Ct. at 594-595 (denying motion to suppress evidence when officer searched bag of unconscious woman, despite presence of emergency medical technicians).[5] Moreover, the information relayed from the hospital tended to show that the emergency was getting worse; as the *413 police knew it, there was reason to believe that the patients’ situation may have been deteriorating. It was objectively reasonable to believe that the defendant’s health could also have deteriorated even after going to the hospital. The officers were therefore justified in seizing the tequila bottles pointed out to them by the defendant with the goal of aiding in either the patients’ or the defendant’s recovery.
The court’s focus on the treatment of the bottles after their seizure is misplaced. Whether the testing of the contents of the bottles was subsequently necessary for the diagnosis and treatment of the patients is irrelevant, and based on decisions made by others rather than the responding officers who made the decision to seize the bottles. Considering subsequent events as determinative of reasonableness is precisely the type of hindsight second-guessing that other courts have decried.[6] It is equally baseless to obligate, as would the court, a request from medical staff before an officer can act in what might otherwise amount to a life-threatening emergency.
2. Conclusion. When the officers arrived at the defendant’s home, they had no reason to believe that the defendant was in any *414 way criminally responsible for the patients’ medical condition. Further, there is no evidentiary basis upon which to conclude that the hospital was aware of circumstances that might lead to an arrest for the crime with which the defendant was ultimately charged. This inquiry is, in the end, unimportant. Even if the officers had reason to suspect the defendant was responsible for the patients’ illnesses, the officers’ subjective intent in retrieving the tequila bottles is irrelevant. Rather, the only important question is whether it was objectively reasonable to believe an emergency existed justifying the seizure of the tequila bottles. I agree with the motion judge’s findings and conclusion that there were sufficient grounds to believe that the bottles, from which all three ill individuals had been drinking the night before, were relevant in addressing what objectively appeared to be a life-threatening emergency, both as to the defendant, and as to the patients already at the hospital. Such a seizure, therefore, was plainly reasonable under the circumstances.
For these reasons, I respectfully dissent.

An undercover police officer was shot in an apartment. Mincey v. Arizona, 437 U.S. 385, 387 (1978). Other officers rushed to his aid. Id. at 387-388. Minutes later, homicide detectives arrived and took charge of the investigation. Id. at 388-389. They aided in the removal of the suspects, and then conducted a search that lasted four days. Id. The United States Supreme Court held that “the Fourth Amendment [to the United States Constitution] does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.” Id. at 392. The Supreme Court, however, refused to apply the emergency exception to the homicide detectives’ search and seizure because all dangerous suspects had been removed prior to the arrival of the homicide officers. Id. at 393.

Officers arrived at a home in response to a complaint of a loud party. Brigham City v. Stuart, 547 U.S. 398, 400-401 (2006). The police observed an altercation in the home between four adults and a juvenile. Id. at 401. The Supreme Court, in concluding that the subsequent warrantless entry into the home was reasonable, expanded the definition of the emergency exception, holding that the police officers’ subjective intent upon entering the dwelling is irrelevant. Id. at 404-405.

A police officer, after responding to a report of a disturbance, encountered signs of recent injury. Michigan v. Fisher, 558 U.S. 45, 48 (2009). The officer could see violence inside, including the defendant throwing projectiles at an unobserved target. Id. The Supreme Court held that it was objectively reasonable for the officer to enter the home, further expanding the exception by observing that it would be “error ... to replace . . . objective inquiry into *410 appearances with . . . hindsight determination that there was in fact no emergency.” Id. at 49.

See, e.g., Armijo ex rel. Armijo Sanchez v. Peterson, 601 F.3d 1065, 1071 (10th Cir. 2010), cert. denied, 562 U.S. 1224 (2011) (“the exigent circumstances exception permits warrantless home entries when officers reasonably believe that some actor or object in a house may immediately cause harm to persons or property not in or near the house” [emphasis in original]); Mora v. Gaithersburg, 519 F.3d 216, 225-226 (4th Cir. 2008) (placing search of home of detained man who had threatened his coworkers squarely within emergency exception, despite his not being home, as “[t]he authority to defuse a threat in an emergency necessarily includes the authority to conduct searches aimed at uncovering the threat’s scope”); United States v. Mayes, 670 F.2d 126, 127-128 (9th Cir. 1982) (allowing search of home for object that had been blocking child’s throat, though child was in hospital under care of doctor when search and seizure of object took place); United States v. Moskow, 588 F.2d 882, 892 (3d Cir. 1978) (entry into vacant building with strong odor of gasoline held to be legal, as of “primary concern to the police was the safety of the occupants of neighboring buildings”); Richardson v. State, 247 So. 2d 296, 298 (Fla. 1971) (affirming denial of motion to suppress when police had been searching defendant’s home with purpose of aiding doctors to save lives of six children then at hospital being treated for symptoms of ingested poison). See also Commonwealth v. McCarthy, 71 Mass. App. Ct. 591, 594-595 (2008) (denying motion to suppress evidence found in defendant’s handbag when officer believed it may have contained cause of her overdose).

The court distinguishes McCarthy on two grounds. In that case, an officer responded to reports of an unconscious woman. McCarthy, 71 Mass. App. Ct. at 592. The officer called for the assistance of an emergency medical technician (EMT). Id. The EMT began tp administer treatment, noted that the woman was suffering from an overdose, and asked the officer if he knew what the woman had taken. Id. The officer then searched the woman’s handbag. Id. at 593. The court first asserts that the case is distinguishable because the defendant in McCarthy was in a public place, rendering her reasonable expectation of privacy less than if she had been in her home. Ante at 404. I find this argument to be inapposite. While it is true that an individual’s expectation of privacy is less in public places, see Commonwealth v. Blood, 400 Mass. 61, 68-69 (1987), one’s expectation of privacy remains paramount with regard to personal effects. Had the officer in McCarthy been able to see the contents of the defendant’s purse simply by looking, this would, of course, not offend the defendant’s expectation of privacy. But when the officer searched the handbag, he was still searching her personal effects, and an exception to the warrant requirement was necessary. In that case, as I would find in this one, the emergency exception provided grounds for that search. Next, the court argues that McCarthy is different because “the defendant [in McCarthy] was in obvious distress and in need of immediate medical attention.” Ante at 404-405. Moreover, the court finds, the “attending *413 medical personnel expressed a specific concern that the defendant might be suffering from a drug overdose that might possibly be verified by a search of the purse.” Id. The record, though, shows only that the EMT asked the officer whether he knew what the defendant had taken. McCarthy, supra at 594. To distinguish these cases, and thus allow a search in McCarthy but not in the present case, would be to split hairs. The officer in McCarthy and the officers in the present case knew overdose was a potential cause for the sickness. They also knew that the attending medical personnel had been unable to ascertain the cause of such an overdose, and the officers in each scenario acted in what they believed was a reasonable response to the situation. The only difference is that the EMT in McCarthy asked the officer if he knew what the defendant had taken. That is not enough to distinguish these cases.

Attributing an investigative analysis to the officer’s actions in seizing the bottles based on something that occurred after the seizure amounts exactly to the “leisured retrospective analysis” we aim to avoid. See Commonwealth v. McDermott, 448 Mass. 750, 766, cert. denied, 552 U.S. 910 (2007). Indeed, I would hold that, even had the officers learned, just moments after the bottles were seized, that the patients and the defendant were cleared medically, the purpose in seizing and holding the bottles would still have been reasonably in response to the ongoing emergency. Regardless, even if one were to attach importance to the eventual use of the bottles in the criminal prosecution of the defendant, the motion judge did “not infer an investigative motive on the part of [the officers] from the fact that [they] had an evidence collection officer summonsed to the scene. Local police departments in Barnstable County routinely use the services of the [s]heriff’s [o]ffice to assist in documenting all manner of police work, including non-criminal events such as traffic accidents.”