**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JORDAN XAVIER ROMERO,

    Defendant - Appellant.

No. 19-4117
(D.C. No. 2:18-CR-00398-CW-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

Jordan Romero challenges the district court's dismissal of his motion to

suppress.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On May 27, 2018, a dispatcher for the Salt Lake City Police Department

("SLCPD") received a 911 call from a woman reporting that she had just witnessed

someone brandish a gun at a man at the Alta Lodge Motel.  The caller identified herself

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

as Sarah, provided the police with her phone number, and stated that the offender was her ex-boyfriend, Jordan Romero. She described Romero as a 27-year-old male who "looks white but [is] half-Mexican," wearing jeans, black shoes, a black shirt with a picture of Marilyn Monroe on it, and a black hat inscribed with the word "Loyalty," and carrying a black gun with red bandana tape on the handle. She said that Romero went to the motel to purchase drugs, and the gun was pulled out during a drug dispute. She also told the dispatcher that Romero and the victim had gone into room 11 of the motel and requested that she be kept anonymous for her safety.

Officers arrived at the motel minutes later and asked two men in the parking lot if they had seen anything. Both stated that they had just arrived and had not witnessed anything suspicious. The officers did not see any shell casings on the ground or anything to indicate that a firearm had been discharged. As they approached room 11, they did not hear any arguments or calls for help. The officers knocked on the door, ordered everyone out of the room, and identified Romero as he exited based on the caller's detailed description. One of the officers detained and handcuffed Romero because he believed that Romero was armed and dangerous. Romero told the officer that he had a 9 mm handgun under his left arm, so the officer lifted his shirt and removed the gun.

Romero was indicted under 18 U.S.C. § 922(g) for one count of possessing a firearm and ammunition as a convicted felon. He filed a motion to suppress evidence derived from his detention, arguing that the officers violated his Fourth Amendment rights by unlawfully entering the motel room and detaining, arresting, and searching

2

him. At the evidentiary hearing, Sarah testified that she had lied in the 911 call. She was actually Romero's current girlfriend, and she made up the armed encounter because she was worried about losing Romero to drugs and wanted him to get arrested so that he could dry out in prison.

The government argued that even though Sarah lied about the encounter, the 911 call had sufficient indicia of reliability to support reasonable suspicion, and Romero did not have a reasonable expectation of privacy in the motel room. The district court agreed and denied the motion to suppress. Romero entered a conditional guilty plea, preserving the right to appeal the district court's evidentiary ruling. On appeal, he argues that the district court erred in denying his motion because the 911 call was insufficient to establish reasonable suspicion that he was engaged in criminal conduct.

**II**

When reviewing a motion to suppress, we review the evidence in the light most favorable to the prevailing party and accept the district court's fact finding unless clearly erroneous. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998). We review the district court's "ultimate determination of reasonableness under the Fourth Amendment de novo." United States v. Brown, 496 F.3d 1070, 1074 (10th Cir. 2007) (quotation omitted).

Romero argues that he was unlawfully seized because the officers did not have reasonable suspicion of criminal conduct. A seizure is only lawful when an officer has reasonable suspicion of wrongdoing. Terry v. Ohio, 392 U.S. 1, 30 (1968). To

3

determine whether an officer has reasonable suspicion, we look "at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Latorre, 893 F.3d 744, 751 (10th Cir. 2018) (quotation omitted). We assess the reasonableness of the facts known to the officer at the time of the seizure, not in light of facts later discovered. Armijo v. Peterson, 601 F.3d 1065, 1072 (10th Cir. 2010). Tips from anonymous informants may provide reasonable suspicion for a seizure if they are reliable. Florida v. J.L., 529 U.S. 266, 270 (2000). We look to the following factors to determine if tips from informants bear sufficient indicia of reliability to support reasonable suspicion: "(1) whether the informant lacked 'true anonymity' (i.e., whether the police knew some details about the informant or had means to discover them); (2) whether the informant reported contemporaneous, firsthand knowledge; (3) whether the informant provided detailed information about the events observed; (4) the informant's stated motivation for reporting the information; and (5) whether the police were able to corroborate information provided by the informant." United States v. Chavez, 660 F.3d 1215, 1222 (10th Cir. 2011).

Applying these factors, the informant's tip contained sufficient indicia of reliability to support reasonable suspicion that Romero was engaged in criminal activity. She provided the dispatcher with her name and cellphone number and stated that she was Romero's ex-girlfriend. She informed the dispatcher that she had personally witnessed Romero pull a gun out on the alleged victim, and she provided detailed information about Romero, including his age, appearance, and location.

4

When the officers arrived at the motel, they did not observe anything that called the credibility of the informant into question.[1]  On the contrary, they corroborated both that Romero was in room 11 and that he matched the detailed description provided by the informant before they detained him.  Under these circumstances, it was reasonable for the officers to rely on the tip and detain Romero.  Accordingly, the district court did not err in denying Romero's motion to suppress.

Romero's arguments to the contrary are unpersuasive.  Romero first argues that under J.L., the officers were required to verify more than Romero's location and description before detaining him.  However, Romero's reliance on J.L. is misplaced.  J.L. involved a "bare report of an unknown, unaccountable informant who neither explained how he knew [J.L. had a] gun nor supplied any basis for believing he had inside information about [J.L.]."  Brown, 496 F.3d at 1075 (quotation omitted).  The tip received by the SLCPD, on the other hand, was from an identifiable individual in a relationship with the suspect with firsthand, detailed information about the alleged incident.  Because this tip came with many of the indicia of reliability discussed in Chavez, the officers did not act unreasonably by failing to exhaust every means of corroboration.

---

[1] Romero contends that the informant's claims were undermined when (1) the officers did not hear an active argument after arriving at the scene and (2) the two men in the parking lot denied having seen anything suspicious.  However, the informant did not claim that the altercation was ongoing, and the two men reported that they had only just arrived in the parking lot.  The informant's tip was therefore not discredited.

Romero next argues that even if the informant was identifiable, we should treat her as anonymous because she requested that her identity be kept secret from Romero. This argument is precluded by our precedent. We have held that the relevant inquiry in determining whether an informant is anonymous is whether she is "capable of being identified" by law enforcement. Id. at 1075. If the caller is identifiable, then she is no longer free to "lie with impunity" because she risks criminal liability for reporting a false claim. Id. at 1076 (quoting J.L., 529 U.S. at 276 (Kennedy, J., concurring)). Accordingly, she can be presumed to be reliable absent special circumstances suggesting that she should not be trusted. Id. at 1075 (quotation omitted).

The informant who contacted the SLCPD provided her real name and actual phone number. An officer confirmed that she could be reached at the number she provided after she spoke with dispatch. She was, therefore, capable of being identified by law enforcement, and she knew that law enforcement could identify her. For this reason, she was not an anonymous caller despite her request that her identity be kept secret from Romero.

### III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

6